Hawkins, Appellant, *v.* Leach, Admr., Bureau of
Unemployment Compensation, et al., Appellees.

260

(No. 6745—Decided December 29, 1961.)

*Messrs. Waterman, Jaffy & Van Heyde*, for appellant.

*Mr. Mark McElroy*, attorney general, and *Mr. A. L. Green-spun*, for appellee Donald B. Leach, Administrator, Bureau of Unemployment Compensation.

*Messrs. Vorys, Sater, Seymour & Pease* and *Mr. James Gorrell*, for appellee Columbus Coated Fabrics Corporation.

BRYANT, J. Everett B. Hawkins, appellant herein, has appealed to this court on questions of law a judgment of the court below affirming a decision of the Bureau of Unemployment Compensation denying him unemployment compensation. Hawkins was fired by the Columbus Coated Fabrics Corporation for allegedly reporting for work under the influence of alcohol, a charge which he denied, but which was upheld by the Administrator and the Board of Review of the Bureau of Unemployment Compensation.

Hawkins worked the second trick starting at 3:30 p. m. and ending at midnight, with a thirty-minute lunch period. He had worked for Columbus Coated Fabrics Corporation, herein called employer, since 1952. The employer had entered into a labor-management agreement with Local No. 487 Textile Workers Union of America, which agreement was effective from October

20, 1958, until October 22, 1961. Under terms of that agreement, the employer was authorized to take disciplinary steps "in the form of warnings, layoffs, or even separation" in case of any employee "reporting for duty under the influence of alcohol."

On Friday, December 4, 1959, Hawkins reported for work at 3:30 p. m. He went to lunch at a restaurant three blocks from the factory, leaving at 6:30 p. m. and returning at 7:30 p. m. He testified that, during his lunch hour, he drank one bottle of beer and had two sandwiches. Upon returning to the factory, just as he was about to punch his timecard, he was accosted by Frank L. Goeller, a foreman, who stated that Hawkins staggered as he made a turn to avoid a table on the second floor near the time clock.

The foreman interrogated Hawkins and obtained an admission from him that he had been drinking. After the foreman left, Hawkins proceeded to the place where he had been working and began moving merchandise. The foreman reported to the night superintendent and to the president of the local union as to Hawkins' admission, and conferences were held at which it was decided to send Hawkins home.

The union immediately filed a protest and, subsequently, a formal grievance as provided in the labor-management agreement. A meeting was called for Monday, December 7, 1959, between the union and representatives of the employer. Hawkins was prevented from attending the meeting by the serious illness of his mother, giving advance notice thereof to both the employer and the labor union. No extension was granted, however, and in the evening hours on December 7, 1959, his employer sent Hawkins a telegram that he had been fired.

On December 16, 1959, Hawkins filed an application for unemployment compensation stating that the reason he was not working was that he had been fired for drinking. On December 29, 1959, the administrator rejected Hawkins' application for unemployment compensation citing as grounds for his refusal the provisions of Section 4141.29 (D) (2) (a), which are, in part, as follows:

"(D) Nothwithstanding [notwithstanding] division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:

" * * *

"(2) For the duration of his unemployment if the administrator finds that:

"(a) He quit his work without just cause or *has been discharged for just cause* in connection with his work, * * *." (Emphasis added.)

On January 29, 1960, Hawkins' application for reconsideration was rejected by the administrator, and Hawkins appealed. A hearing was held before a referee at which four witnesses testified, two on behalf of Hawkins and two on behalf of the employer. Each of the witnesses was interrogated three times, first by the referee, then by representatives of Hawkins and the employer.

Hawkins testified first, denying emphatically that he was drunk or under the influence of intoxicating liquor and stating that he had consumed one bottle of beer at lunch time, described as a pint-size bottle, and that it was the only alcoholic beverage he consumed throughout the day.

The other witness for Hawkins was Jack H. Beard, union president, who stated that Hawkins did not appear to be drunk or under the influence of alcohol, did not appear to have been drinking and in all respects appeared to be normal.

The first witness for the employer was foreman Goeller. Goeller, who had said that Hawkins walked in a staggering manner, placed the location of this as in the vicinity of the time clock on the second floor. He stated further that it occurred as Hawkins was making a turn to avoid a table which was between him and the time clock.

Goeller admitted under questioning by the referee that it was possible that a normal person would be unsteady on his feet if he were making this turn. The only other witness for the employer was Lief Hatlestad, factory employment manager, who did not see Hawkins that evening. Hatlestad identified the three employer exhibits admitted. Exhibit No. 1 was an "Employee Performance Report" signed by Goeller, which contained the statement over the signature of Goeller that Hawkins "had been drinking *but was not intoxicated.*" (Emphasis added.) Employer Exhibit No. 2 was the "Labor-Management Contract," effective between October 20, 1958, through October 22, 1961. Exhibit No. 3 was "Employee Status Change Report"

which was signed by F. O. Brink, superintendent and stated that Hawkins was fired for reporting for work under the influence of alcohol.

It is not the purpose or function of a reviewing court to substitute its judgment for that of the agency which, in this case, was the board of review. We note that the referee, who presided when the witnesses testified, held that there was a failure of proof that Hawkins was under the influence of alcohol.

It is clear from the record that Hatlestad was not present when Hawkins returned from lunch and could not and did not testify with respect to Hawkins' condition. Hawkins denied he was under the influence of alcohol, and in this he was fully supported by the testimony of Beard.

Night foreman Raymond, who did see Hawkins at the time, was not called as a witness. F. O. Brink, who with Goeller signed Exhibit No. 1, and who was the only one signing Exhibit No. 3, appears not to have been present when Hawkins returned from lunch, and did not testify.

That leaves the testimony of foreman Goeller. It was Goeller who discovered at 6:30 p. m. that Hawkins was missing and who kept a lookout for Hawkins during the hour he was out to lunch. According to Hawkins, it was Goeller who "raised Hell with me" upon Hawkins' return.

As to whether Hawkins was "under the influence of alcohol" in violation of the provision in the union contract, if that phrase is synonymous with intoxication, Goeller supported Hawkins' position by stating in Exhibit No. 1 that Hawkins "was not intoxicated."

Goeller's testimony was spread over 22 pages of the record, yet nowhere does he testify that Hawkins was drunk or intoxicated or under the influence of alcohol.

Goeller did not even mention the presence or absence of the odor of alcohol, if any, about Hawkins. This was apparent to the referee and he unsuccessfully tried to get Goeller to testify as to what he observed. The question and answer follow:

"Q. Now, what other observation did you make of Mr. Hawkins' conduct? A. Well, at this time I just turned and walked down the steps to get Lawrence Raymond and I got ahold of Mr. Raymond the night superintendent and brought him back up to the third floor and that's where the three of us had our talk, up there."

From one answer given by Goeller, it would appear that he felt he was unable to tell when a person had reached "a point of drunkenness," which would seem to raise a question as to his ability to express an opinion on the subject. At one point in the record, Goeller testified as follows:

"Well, I would say whether the man had been drinking or not. I mean, to distinguish how much a man has had or where a point of drunkenness is, I do not know."

The referee handed down a decision on February 24, 1960, reversing the finding of the administrator and ordering compensation paid for the reason that the company rules "do not provide for those who come to work after consuming an alcoholic drink. An allegation of being under the influence requires a degree of proof not established by the evidence in this case."

The Board of Review of the Bureau of Unemployment Compensation determined to review the referee's decision upon the basis of the record already made and on April 13, 1960, in a decision concurred in by two of the members of the board, one dissenting, decided that Hawkins was ineligible to receive unemployment compensation.

Hawkins appealed this decision to the Common Pleas Court of Franklin County, upon the ground that the board erred (1) in deciding he was discharged for just cause in connection with his work, (2) in refusing to allow unemployment compensation to be paid, and (3) in that the decision was unlawful, unreasonable and against the manifest weight of the evidence.

The court below affirmed the decision of the board on February 2, 1961, and on March 7, 1961, rendered a revised decision to correct errors of fact in the previous decision, after which notice of appeal was filed. Four errors were assigned as follows:

"1. That the Common Pleas Court erred in finding that the appellant was discharged with just cause in connection with his work within the meaning of Chapter 4141, Revised Code.

"2. That the Common Pleas Court erred in finding that the decision of the board of review was lawful, reasonable and not against the manifest weight of the evidence.

"3. That the Common Pleas Court erred in holding that the burden of proof before the board of review is on the claimant, in contradiction of Chapter 4141, Revised Code.

"4. That the Common Pleas Court erred in holding that all

information should be considered when the employer gave a specific reason for the discharge, in contradiction of Chapter 4141, Revised Code.''

We shall give first consideration to the first two claimed errors, considering them together. As has been heretofore stated, the board of review rendered its decision based upon the record, testimony and evidence presented before the referee and did not conduct a new hearing, while in the court below the same evidence appears to have been relied upon except that in support of Hawkins' motion to reconsider the court's decision for mistakes of fact, an affidavit of Jack H. Beard, union president, was filed in which Beard stated that the union filed a formal complaint with the employer on Monday, December 9, 1959; that he personally informed the labor relations director of the employer of the union protest; that it is the established policy that once a formal protest is filed ''a grievance could be filed any time thereafter''; that subsequently a formal grievance was filed by the union as a result of which the case was due to come up for arbitration on February 13, 1961, at the Fort Hayes Hotel; and that a Mr. Kates was to be the arbitrator. The affidavit further stated in part as follows:

''The affiant saw Mr. Hawkins on December 4, 1959, at the time in question, and did not believe he was under the influence of alcohol. The affiant asked Mr. Hawkins if he had been drinking. Mr. Hawkins said he had a beer with his sandwich. Mr. Hawkins gave *no indication* of being under the influence of alcohol.

''It has been the custom in Mr. Hawkins' department for people to take up to an hour for lunch. Mr. Hawkins' work was of such a nature that he could select his lunch at any time during the work day. His job was removing stock and stocking it. As far as his job was concerned, his work could not interfere with anyone else's production. His work could not cause a pile-up on any production line, and it did not on this occasion.

''Further, affiant says that Columbus Coated Fabrics had made an offer of settlement to Mr. Hawkins of approximately one thousand three hundred dollars ($1,300.00) if he would drop the arbitration and the unemployment compensation cases. The affiant discussed the settlement offer with Mr. Hawkins and he did not want to accept the settlement; he wanted his job back.''

The statute pertaining to appeals from decisions of the board is Section 4141.28 (N) of the Revised Code which provides, in part, as follows:

"(N) Any interested party may, within thirty days after notice of the decision of the board * * * appeal from the decision of the board to the Court of Common Pleas * * *. If the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse and vacate such decision or it may modify such decision and enter final judgment in accordance with such modification; otherwise such court shall affirm such decision. Any interested party shall have the right to appeal from the decision of the court as in civil cases."

Thus it appears that the issue before the court below was whether the decision of the board was unlawful, unreasonable or against the manifest weight of the evidence, and those grounds appear to be encompassed in the second assignment of error before this court.

Considerable reliance appears to have been placed both by the board and the court below upon the alleged failure of Hawkins, or the union acting for him, to file a grievance within thirty days of December 4, 1959. The claim on behalf of the employer was that the labor-management agreement outlawed such grievance unless filed within a thirty-day period. This was disputed on behalf of Hawkins by president Beard, who stated in the affidavit above referred to that "as long as there is a formal protest, the policy has been that a grievance could be filed at anytime thereafter."

At the hearing before the referee, employer representatives introduced Employer Exhibit No. 2, being the labor-management agreement in effect at the time, which contains Article VII entitled, "Negotiations and Grievances." Section 2 of the article would appear to support the position taken by Mr. Beard that "regular channels" are to be resorted to first in attempting to settle differences which may arise. Section 2 provides in part as follows:

"That the employees shall have the right to be represented by a Grievance Committee * * *.

"This committee may bring before the management of the company all grievances that fail to be settled through the regular channels, * * *"

Perhaps the principal controversy in this case when before the board of review was whether Hawkins was under the influence of alcohol upon his return from lunch at 7:30 p. m., Friday, December 4, 1959. As has been pointed out, the labor-management contract authorized discharge in the case of any employee "reporting for duty under the influence of alcohol." Much of the litigation concerning the phrases, "under the influence of alcohol," or, "under the influence of intoxicating liquor," has arisen in connection with criminal prosecutions for driving a motor vehicle while intoxicated.

The court below referred to *Masoncup* v. *State*, 47 Ohio App., 32, in which Masoncup, who admitted having two drinks of whiskey, drove a motor vehicle in which three others rode on the front seat, one of whom was killed in an accident which ensued. The appellate court in that case was concerned solely with the charge given by the trial court to the jury, and whether it was correct.

In *State* v. *Steele*, 95 Ohio App., 107, decided in 1952, the second paragraph of the syllabus reads as follows:

"The words, 'under the influence of alcohol,' as used in an affidavit charging an accused with operating a motor vehicle while under the influence of alcohol, mean that the accused must have consumed some intoxicating beverage in such quantity that its effect on him was to adversely affect his actions, reactions, conduct, movements or mental processes in such manner as to deprive him of that clearness of intellect and control of himself which he would otherwise have possessed under the circumstances then existing."

See also *State* v. *Neff*, 104 Ohio App., 289, decided in 1957, in which the third paragraph of the syllabus is as follows:

"In a criminal action, evidence by arresting officers that defendant's eyes were glassy and bloodshot, that his breath smelled strongly of some intoxicant, that his speech was slurred, that his eyes did not seem to focus, that his walk was unsteady and uncertain, that he admitted having had 'a couple of beers,' and that he stated he was not ill, is sufficient to support a finding of the trial court that defendant was 'under the influence' of intoxicating liquor."

See, also, 6 Ohio Jurisprudence (2d), 735, Automobiles, Section 437; 30 American Jurisprudence, 538, Intoxicating

Liquors, Section 21; and 61 Corpus Juris Secundum, 717, Motor Vehicles, Section 625, c (2).

In determining questions arising under the first two assignments of error, namely, that the court below erred in finding that Hawkins was discharged with just cause in connection with his work and in holding that the decision of the board of review was lawful, reasonable and not against the manifest weight of the evidence, it becomes of major importance to determine just what transgression or transgressions were alleged to have been committed by Hawkins and the sufficiency of the evidence offered in support of them.

As above pointed out, it is not in dispute that the labor-management agreement authorized discharge of an employee who reported for duty under the influence of alcohol. It is important, therefore, to consider what evidence or other proof was offered which directly or by reasonable inference supported the claim that Hawkins was under the influence of alcohol on the evening of December 4, 1959.

It is not in dispute, nor can it be, that Hawkins consumed a bottle of beer, for Hawkins admitted it to foreman Goeller and others soon after his return from lunch. At the hearing Hawkins made a further admission thereof.

Hawkins specifically denied that he had a large bottle of beer or any other beverage containing alcohol and further denied that he was intoxicated or under the influence of alcohol.

We have searched the record with care to find any evidence which shows that Hawkins was under the influence of alcohol.

As heretofore pointed out, foreman Goeller never at any time testified that Hawkins was either drunk, intoxicated or under the influence of alcohol, but, on the contrary, in Employer Exhibit No. 1, Goeller said that Hawkins "was not intoxicated."

It is true that foreman Goeller testified that Hawkins, in the vicinity of the time clock on the second floor, staggered. In connection with this, the following testimony was given by Goeller:

"Q. As he made the little turn towards the clock? A. That's right.

"Q. He staggered to one side? A. Staggered on one side.

"Q. Well, is there a gate or rail there or something? A. No sir. Well, there is a table that sits out a little ways, not too far.

"Q. You have to step out around the table? A. Well, it depends on how he was going. The way he was going, he was going towards the table and then he went out around it.

"Q. Then he was maneuvering so that he was turning. A. Yes sir.

"Q. And it's quite possible that a normal person would be unsteady on his feet if he turned the corner? A. Oh, yes, it's possible.

"Q. How, what other observation did you make of Mr. Hawkins' conduct? A. Well, at this time I just turned and walked down the steps to get Lawrence Raymond and I got ahold of Mr. Raymond the night superintendent and brought him back up to the third floor and that's where the three of us had our talk, up there.''

Upon questioning by counsel for Hawkins, Goeller stated that Hawkins was able to talk ''all right,'' this testimony being given:

"Q. You didn't mean that he wasn't able to talk, did you? A. Oh, no, he could talk, that's right.

"Q. He was all right? A. Yes.''

As far as we can ascertain there is no other evidence in the record bearing on this highly important question except records relating to incidents alleged to have happened in 1954 and 1957. With reference to these, it should be pointed out that the labor-management contract, Employer's Exhibit No. 2, was not effective until October 20, 1958, and there is no evidence in the record as to what contract provisions, if any, were in effect during the years prior to October 20, 1958.

The record shows that, when the referee asked Goeller as to anything else which had been observed about Hawkins' conduct, no answer was forthcoming.

In some jurisdictions, the phrase, ''under the influence of intoxicating liquor,'' has been interpreted to mean the same as intoxication. See *Kuroske* v. *Aetna Life Ins. Co.*, 234 Wis., 394, 291 N. W., 384.

It has been held that a person is ''intoxicated'' or ''under the influence of alcoholic liquor,'' when he has lost to an appreciable degree the normal control of his physical and mental faculties. See *Shanahan* v. *State*, 162 Neb., 676, 77 N. W. (2d), 234, 237. In *State* v. *Blankenship*, 229 N. C., 589, 50 S. E. (2d),

724, at p. 728, it was held that a person was under the influence of intoxicating liquor when, as a result of his drinking, there is a loss of the normal use of physical or mental faculties, or both, to an extent appreciably impairing one or both faculties.

Both appellees have suggested that the board of review was entitled to reject the reason given by the employer as the basis of discharge and make an independent determination. The contention appears to be that even if there is insufficient evidence to prove that appellant was under the influence, still there are other grounds of record which would justify discharge for cause.

Under Section 4141.29, Revised Code, the requirement is that the employee "has been discharged for just cause in connection with his work." Under Section 4141.28, Revised Code, the determination is to be made by the state "on the basis of any facts found." We think the board is entitled to reject the reason an employer has assigned for a discharge. However, under Section 4141.29, Revised Code, the ultimate fact to be determined from the evidence is the reason or reasons the employer did in fact discharge the employee. If that reason constitutes just cause, compensation is to be denied. The existence of grounds upon which the employee might have been discharged is immaterial if they were not in fact the grounds of discharge.

There is evidence that appellant left work for lunch at an unauthorized time and that he was, to some extent, insubordinate when called to account. But, there is no evidence from which it could reasonably be determined that these were the basis of his discharge. It is obvious that his prior work record and the subsequent conduct of the grievance procedure cannot constitute just cause for the discharge at the time in question.

For the reasons above set forth, the first and second assignments of errors are well taken and must be sustained, in light of which it is unnecessary for us to express an opinion on the third and fourth errors assigned.

The judgment of the court below must be, and hereby is, reversed and set aside and the cause remanded for further proceedings in accordance with law.

*Judgment reversed.*

DUFFEY, P. J., and DUFFY, J., concur.