Wade L. HEHR, Linda S. Huffman, Tommy J. Gray, and Bobby L. Partin, Appellants,

v.

REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION, John C. Mowrer, Joe A. Harris and Nanette L. McDermott, as members of and constituting the Review Board of the Indiana Employment Security Division, and Ferraloy, a Clevite Industries Company, Appellees.

No. 93A02-8709-EX-00373.

Court of Appeals of Indiana, Second District.

March 7, 1989.

Nora L. Macey, Mark T. Robbins, Segal and Macey, Indianapolis, for appellants.

Kim F. Ebert, Julia F. Crowe, Locke Reynolds Boyd & Weisell, Indianapolis, for appellees.

SULLIVAN, Judge.

This is a consolidated appeal from decisions of the Review Board of the Indiana Employment Security Division, denying claimants Wade L. Hehr, Linda S. Huffman, Tommy S. Gray and Bobby L. Partin unemployment compensation benefits.

We affirm in part and reverse in part.

All four claimants were discharged by the employer, Ferraloy, A Clevite Industries Company, for acts which occurred during a strike on the employer's premises April 6, 1987. Specifically, the claimants were discharged for damaging or attempting to damage cars crossing the picket line on that date. Individual hearings were held for Hehr and Huffman, and a consolidated hearing was held for Gray and Partin. The referee's findings that the claimants were discharged for just cause and therefore disqualified from receiving benefits were, in each case, adopted by the Board.

The grounds for discharge for just cause under I.C. 22–4–15–1(d) (Burns Code Ed. Repl.1986) upon which the Board relied are as follows:

"(2) knowing violation of a reasonable and uniformly enforced rule of an employer;

* * * * * *

(7) conduct endangering safety of self or coworkers; or

(8) ... any breach of duty in connection with work which is reasonably owed an employer by an employee."

After setting forth the standard of review applicable to all claimants, we will separately discuss each claimant's appeal.

An assignment of errors that the decision of the review board is contrary to law presents both the sufficiency of the findings of fact to sustain the decision and the sufficiency of the evidence to support the findings of fact. I.C. 22–4–17–12 (Burns Code Ed.Supp.1988).

"Under this two-tier standard of review, the Review Board's 'finding of ultimate fact' is the conclusion, and the 'findings of basic facts' are the premises from which the Review Board deduced its conclusion." *Graham v. Review Board of the Indiana Employment Security Division* (1979) 3d Dist., 179 Ind.App. 497, 386 N.E.2d 699, 701.

"At the first level of review, we examine only the relationship between the premises and the conclusion and ask if the Board's deduction is 'reasonable.' (Cites omitted.) The inquiry at this first level of review may be termed a 'question of law.' (Cites omitted.)

At the second level of review, we inquire into the nexus between the premises or findings of basic facts and the evidence presented to determine if the evidence justified those findings." *Id.* (*quoting Gold Bond Building Products Division National Gypsum Co. v. Review Board of the Indiana Employment Security Division* (1976) 2d Dist., 169 Ind.App. 478, 486, 349 N.E.2d 258, 263).

When an employee is alleged to have been terminated for just cause, the employer bears the burden of proof to establish a prima facie showing of just cause for termination. If that has been done, the burden shifts to the employee to introduce competent evidence to rebut the employer's case. *Sloan v. Review Board of the Indiana Employment Security Division* (1983) 3d Dist., Ind.App., 444 N.E.2d 862.

Although our standard of review precludes reweighing the evidence, we must reverse if reasonable persons would be bound to reach a different result upon a consideration of the evidence from the perspective favoring the Board's decision. *Frank v. Review Board of the Indiana Employment Security Division* (1981) 3d Dist.Ind.App., 419 N.E.2d 1318.

■ Because the stated cause for discharge was restricted to causing damage to property or attempting to cause damage to property, denial of unemployment benefits must be premised upon this ground. *Voss v. Review Board of the Indiana Employment Security Division,* (1989) 2d Dist. Ind.App., 533 N.E.2d 1020; *Mine Safety Appliances Co. v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review* (1980) 55 Pa. Commw.Ct. 517, 423 A.2d 798; *Hawkins v. Leach* (1961) 115 Ohio App. 259, 185 N.E.2d 36; *See Miller v. F.W. Woolworth Co.* (1960) 359 Mich. 342, 102 N.W.2d 728. Therefore, we will not consider elements of intimidation of non-strikers or conduct which endangered self or other employees. We will only consider the claimants' conduct in causing or attempting to cause damage to property as it relates to a violation of an employer rule or a breach of a duty reasonably owed to the employer.

■ The claimants are correct in stating that in order to establish a prima facie case for violation of an employer rule under I.C. 22–4–15–1(d)(2), it is necessary for an employer to demonstrate that the claimant (1) knowingly violated, (2) a reasonable, and (3) uniformly enforced rule. *Frank, supra,* 419 N.E.2d at 1319. Thus, the Board's findings have been held inadequate where the Board has failed to find that the rule was reasonable and uniformly enforced (*see Smithson v. Review Board of the Indiana Employment Security Division* (1983) 2d Dist.Ind.App., 446 N.E.2d 1014. However, where an alternative finding may be supported by the same set of facts and circumstances, the Board may rely on an alternative basis (subject to the employer's stated reason for discharge) in finding that the claimant was justly discharged. *See Moore v. Review Board of the Indiana Employment Security Division* (1984) 3d Dist.Ind. App., 461 N.E.2d 737. Thus, although we cannot affirm the Board's decisions on the basis that the claimants violated an employer rule against damaging property unless the Board makes the requisite findings, we need not reverse the Board's decisions if the Board's findings that the employees breached a duty reasonably owed to the employer can be upheld.

### I. WADE L. HEHR

The Board's findings and conclusions with respect to Wade Hehr are as follows:

"The evidence of record substantiates a finding that the claimant worked for this employer for the period January 26, 1976 through April 14, 1987, as a senior set-up person at the rate of nine thirty ($9.30) an hour. The claimant was discharged for intentionally damaging or attempting to damage vehicles entering the plant during a labor disagreement.

In a discharge case, the employer has the burden of showing just cause for the discharge. Discharge for just cause as used in this section is defined to include any breach of duty reasonably owed the employer, dangerous conduct, or rule violations.

The referee finds that a labor disagreement was in existence at this employer at the time the incident of misconduct is alleged to have occurred. The claimant was on a picket line. He was still an employee at that time although on strike. The incident occurred April 6, 1987. The claimant was observed by James Pattison, Bruce Patterson, Rusty Crockett, and James Sharp striking vehicles with his hands as they entered the gate. The employer provided a film of the claimant's actions which was shown at the hearing.

As a result, the referee concludes that the employer has sustained its burden of proof. The employer's rule does prohibit damaging property on employer premises. The claimant's actions had the potential to be dangerous and also were a breach of duty owed the employer and

employees alike. It is held, therefore, claimant was discharged for just cause within the meaning of Chapter 15, Section 1 of the Employment Security Act." Hehr Record at 92–93.

Hehr argues that he did not strike any vehicles with his hands, and even if he did make contact with any of the passing cars, no damage resulted. Hehr also argues, as do the other three claimants, that the Board failed to make certain necessary findings to support its determinations of discharge for just cause.

██ With regard to Hehr specifically, to the extent that the Board relies upon Hehr's alleged violation of Ferraloy's rule against damaging property on its premises, we cannot affirm for the following reasons. The Board found that an existing employer rule prohibited the damage of property on the employer's premises; however, there is no evidence in the record of Hehr's hearing to support this finding.[1] Even if there were evidence of such a rule, there is no evidence that the conduct did in fact violate the rule. Although the Board found that Hehr, with his hands, struck vehicles as they entered the gate, it was necessary for the Board to find also that damage to the vehicles resulted. Not only was there no such finding, but there was no evidence which would have supported one. We therefore cannot affirm the Board's finding that Hehr was discharged for just cause upon this basis.

██ However, the Board also found that Hehr's actions constituted a breach of duty owed to the employer. Hehr argues, as do the other claimants, that "refusing to work, attempting to dissuade others from entering the plant and yelling slogans at managers and replacement employees are contrary to the usual duty owed an employer. Yet they are statutorily protected incidents of the right to strike and picket and cannot breach a duty to the employer in this context." Reply Brief at 11. We acknowledge that in strike situations emotions are often highly volatile and an em-

ployee may engage in some behavior which might not otherwise be tolerated by an employer. However, while claimants *might* be correct in making the above quoted statements, it is clear that intentionally damaging or attempting to damage property of a co-employee or of the employer would not fall within a reasonable range of acceptable behavior under the circumstances. Unlawful behavior is not permissible merely because it occurs in a strike situation.

We realize that the "breach of duty" ground for just discharge is an amorphous one, without clearly ascertainable limits or definition, and with few rules governing its utilization. As such, it is subject to potential abuse by an employer as a convenient ground upon which to justify a discharge, unless the Board carefully exercises its discretion and limits its application where necessary. In considering whether an employer may utilize this provision as a basis for justifying its action, the Board should consider whether the conduct which is said to have been a breach of a duty reasonably owed to the employer is of such a nature that a reasonable employee of the employer would understand that the conduct in question was a violation of a duty owed the employer and that he would be subject to discharge for engaging in the activity or behavior.

██ In finding that Hehr breached a duty to the employer, the Board implicitly found that damaging or attempting to damage the property of a co-employee on the employer's premises breached a duty reasonably owed to the employer. No reasonable employee could sincerely believe or successfully argue that he was entitled to engage in such activity, nor do the claimants here argue that they were entitled to engage in such behavior. In ascertaining what behavior constitutes an "attempt" to damage property, we find the definition of attempt contained in I.C. 35–41–5–1 (Burns

---

1. Evidence adduced in other employees' separate hearings may not serve as the predicate for a finding as to Hehr. The only company policy testified to in Hehr's hearing was one against intimidating, threatening and harrassing other employees.

Code Ed.Repl.1985)[2] instructive. Borrowing the relevant portions of the statute, we conclude that where a person intentionally or knowingly engages in conduct that constitutes a substantial step toward damaging property, such a person may properly be considered to have attempted to damage property, thereby breaching a duty owed to the employer. Obviously, this is a very fact-sensitive determination which must be made on a case by case basis.

■ As applied to Hehr, the Board found that Hehr's conduct consisted of striking vehicles with his hands as they entered the gate. As already noted, there was no finding nor evidence as to actual damage. There was also no finding as to the force which Hehr used in striking the vehicles.[3] While it may be reasonable to conclude that Hehr intentionally struck the vehicles, such does not lead to an implicit conclusion that Hehr's actions (using only his hands to strike vehicles) were likely to cause damage. The striking in question would have to have been done in a manner which would permit an inference that damage was a reasonably anticipated consequence. There is no finding as to the manner of the striking. An essential fact is therefore omitted and the conclusion of the Board may not therefore be affirmed. We accordingly reverse and remand for further proceedings not inconsistent with this opinion.

## II. LINDA S. HUFFMAN

■ The Board made the following findings and conclusions with respect to Linda Huffman:

"The referee finds the claimant worked for this employer as a set-up operator. She was discharged for damaging or attempting to damage vehicles entering the plant during a labor disagreement.

In a discharge case, the employer has the burden of showing just cause for the discharge. Discharge for just cause as used in this section is defined to include rule violations, dangerous conduct, or any breach of duty reasonably owed the employer.

In this case, the referee finds that the claimant was participating in a strike against this employer. She was on the picket line April 6, 1987. She was photographed by James Pattison holding a metal object scratching the sides of cars crossing the picket line. The claimant was observed scratching the car of Ms. Lindburgh by Mr. Pattison. Ms. Lindburgh testified that she had scratches to the left quarter panel of her car and had heard a scratching noise when she crossed the picket line.[4] However, she was more concerned for her safety at the time and didn't stop or get out.

As a result, the referee concludes that the employer has sustained its burden of proof. The claimant is shown on the film, was also observed by a witness, and the damage to at least one vehicle was described. Although claimant was not working at the time, she was on the employer premises and damage to property on employer premises is a dischargeable offense. The claimant's actions also are disqualifying as they are inconsistent with the intent of the Act which is to provide unemployment benefits to those who are unemployed through no fault of their own. It is held, therefore, claimant was discharged for just cause within the meaning of Chapter 15, Section 1 of the Employment Security Act." Huffman Record at 81–82.

Huffman also denies coming into contact with and damaging any vehicles crossing

---

**2.** Indiana Code 35–41–5–1 defines attempt in part as follows: "A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime."

**3.** Although there was testimony by the employer that Hehr attempted to break a side view mirror, the Board made no finding as to this allegation.

**4.** A summary of testimony is not a finding that the content of the testimony is a fact. *Perez v. United States Steel Corp.* (1981) Ind., 426 N.E.2d 29, *aff'd*, 428 N.E.2d 212. However, the Board states that Huffman was observed scratching the car. This constitutes an adequate finding that Huffman scratched the car.

the picket line. The Board, however, found her to have damaged at least one vehicle. The Board further found this action of damaging property on employer premises to be a "dischargeable offense." Construing the Board's findings and conclusions as a whole (specifically, reading the finding of a dischargeable offense in conjunction with the second paragraph which sets for the three alternative grounds for discharge), it is apparent that the Board found Huffman's actions to be a dischargeable offense under one or more of the three grounds listed in the second paragraph. That Huffman intentionally damaged or attempted to damage passing vehicles is implicit in the fact that she was filmed holding a metal object and scratching the sides of not just one passing vehicle, but several passing vehicles.[5]

Although we cannot affirm the Board's negative award as to Huffman on the basis of a rule violation due to the Board's failure to find uniform enforcement of the rule,[6] we can affirm on the basis that intentionally causing damage to a co-employee's property on employer premises is a breach of duty reasonably owed to the employer. We therefore affirm the Board's decision as to Huffman.[7]

### III. TOMMY S. GRAY

 The Board made findings and conclusions with respect to Tommy Gray as follows:

"The referee finds that the claimant worked for this employer for the period September, 1977 until April 14, 1987, as an adjusting operator at the rate of eight fifteen ($8.15) an hour. The claimant was discharged for damaging, or attempting to damage, vehicles crossing the picket line.

In a discharge case, the employer has the burden of showing just cause for the discharge. Discharge for just cause as used in this section is defined to include dangerous conduct, rule violations, or any breach of duty reasonably owed the employer by an employee.

In this case, the referee finds that the claimant was observed intentionally striking a vehicle on the left side with a club as it was crossing the picket line. The claimant was carrying a wooden axe handle.

As a result, the referee concludes that the employer has sustained its burden of proof. The claimant's actions were dangerous, violated employer policy since he was on the plant premises at the time, and did constitute a breach of duty he reasonably owed the employer and employees alike. The claimant's actions are therefore disqualifying under the Employment Act. It is held, therefore, claimant was discharged for just cause within the meaning of Chapter 15, Section 1 of the Employment Security Act." Gray Record at 99–100.

Gray admits to having a board in his possession while on the picket line, but denies using it to strike vehicles. The Board, however, found that Gray had intentionally struck a vehicle as it crossed the picket line. The Board found that Gray's actions thus violated an employer policy

---

**5.** Although the claimants contend that a film taken during the incidents clearly shows they did not engage in any misconduct, our viewing of the film does not permit a conclusion to that effect. Neither does the film, except as to Huffman, add to the probative weight which may be given to any of the testimony concerning the conduct of the claimants. While it would have been better for the Board to have stated what it found the film to have shown with respect to all claimants as it did with respect to Huffman, the Board was not required to do so. The Board is not required to make findings as to every piece of evidence before it.

**6.** It may well be that absolute adherence to a requirement that uniform enforcement of a rule be proved is inappropriate. For example, it would be impossible for an employer to prove "uniform" enforcement of a rule which is being enforced for the first time. Be that as it may, it would seem appropriate in such instance to require the employer to bring forth that circumstance and thereby avoid an "uniform enforcement" argument.

**7.** We caution that our holding should in no event be read to mean that activity on a picket line, if otherwise lawful, may be used as just cause for discharge under the guise that it violated a duty owed to the employer.

and also breached a duty reasonably owed to the employer.

Because there is no finding as to uniform enforcement or actual damage, we cannot affirm the Board's decision on the basis that Gray violated an employer rule. However, we can affirm on the basis that Gray's actions breached a duty reasonably owed the employer by attempting to damage cars on the employer's premises.

The Board found that Gray intentionally struck a vehicle with a club. It is reasonable to conclude that the use of an instrument such as a club in intentionally striking a vehicle constitutes a substantial step towards damaging property. In contrast to the use of bare hands in striking a car, a club would not have to be wielded with much force to cause damage. Both the likelihood of damage and the extent of damage are much greater where a person uses a club to strike a passing vehicle than where the person uses only his bare hands. We therefore affirm the Board's decision as to Gray.

## IV. BOBBY L. PARTIN

The Board made the following findings and conclusions with respect to Bobby Partin:

"The referee finds that the claimant worked for this employer for the period June 20, 1978 through April 14, 1987, as a maintenance man at the rate of nine seventy ($9.70) an hour. The claimant was discharged for damaging, or attempting to damage, vehicles crossing the picket line.

In a discharge case, the employer has the burden of showing just cause for the discharge. Discharge for just cause as used in this section is defined to include dangerous conduct, rule violations, or any breach of duty reasonably owed the employer by an employee.

In this case, the referee finds that witnesses identified Mr. Partin as carrying a club on the picket line. He struck at least one (1) vehicle that crossed the picket line. This was a silver gray Chevy Monte Carlo. When the car crossed the picket line, the claimant, and several other individuals, surrounded it.

As a result, the referee concludes that the employer has sustained its burden of proof. Although claimant was not working at the time, he was on the employer premises participating in a labor disagreement. Intentionally damaging or attempting to damage cars that are crossing the picket line is a disqualifying action. It is held, therefore, the claimant was discharged for just cause within the meaning of Chapter 15, Section 1 of the Employment Security Act." Partin Record at 117–18.

Partin denies striking and damaging any vehicles on the picket line. The Board nevertheless found that Partin had struck at least one vehicle crossing the line. It additionally found that intentionally damaging or attempting to damage cars crossing the line is a disqualifying action. The Board therefore implicitly found that Partin had intentionally damaged or attempted to damage property. As stated in our discussion regarding Huffman, it is apparent that the Board found that Partin's actions were disqualifying under one or more of the grounds listed in the second paragraph of the findings.

Although we cannot affirm the Board's just cause determination on the basis of a rule violation because there was no finding of uniform enforcement or actual damage (attempting to damage property is not, according to the evidence, a violation of the employer's rule), we may affirm on the breach of duty basis. Partin was found to have struck at least one vehicle with a club. An intent by Partin to cause damage may be inferred from the use of the club in such a manner as was likely to cause damage. For the same reasons discussed with respect to Gray, it is reasonable to conclude that Partin's actions amounted to a substantial step toward damaging property of a co-employee on the employer's premises. We therefore affirm the Board's determination with respect to Partin.

We do not retain jurisdiction with respect to such further proceedings as may be conducted with respect to Hehr or for any

prospective judicial review which may follow the determination of the Board.

SHIELDS, P.J., concurring.

HOFFMAN, J. concurs in part and dissents in part with opinion.

HOFFMAN, Judge, concurring and dissenting.

I concur except as to "I. WADE L. HEHR" to which I dissent.

The Board found "[t]he claimant's actions had the potential to be dangerous...." This certainly implies that Hehr's actions were likely to cause damage. The findings were adequate and the decision of the Board should be affirmed.