**Charles H. McCLAIN, Sr., Appellant,**

v.

**REVIEW BOARD OF THE INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT, and Iupui Human Resources Department, Appellees.**

No. 93A02–9602–EX–72.

Court of Appeals of Indiana.

March 19, 1997.

Charles H. McClain, Sr., Indianapolis, pro se.

Pamela Carter, Attorney General, Michael K. Ausbrook, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Charles H. McClain, Sr. (McClain), appeals the decision of the Unemployment Insurance Review Board (Board) determining that McClain was fired by IUP-UI for just cause under I.C. 22–4–15–1 (Burns Code Ed. Supp.1996). In makings its determination, the Board adopted the findings and conclusions of the Administrative Law Judge (ALJ).

We reverse.

McClain presents one issue for review: whether he violated a known, reasonable and uniformly enforced policy of his employer,

IUPUI, and was therefore fired for just cause.

The facts before us are as follows: McClain was a full-time custodian at the Indiana University Medical Center in Indianapolis and was working on the night of January 20, 1995. On that evening, Jess Carrasquillo (Carrasquillo), McClain's supervisor, was near the time clock room at 11:00 p.m. He sat down next to another employee, James Jones (Jones) and noticed that Jones was holding four time cards. The shift ended at 11:30 p.m., whereupon Carrasquillo observed Jones clock out two of the time cards before Carrasquillo stopped him. Jones had clocked out himself and McClain at that point and had yet to clock out the other two employees.

McClain claimed that he asked Jones to clock him out at around 11:25 p.m. and that he was in the area with Jones at least two times between 11:00 and 11:29 p.m. However, Carrasquillo testified that McClain never entered the area and Jones had McClain's time card from 11:00 p.m. until clocking out. McClain said that he gave Jones his time card because he was assisting another employee, Diane McGraw, with her frozen car doors in the parking lot. McClain and the other three employees involved were ultimately discharged for the incident.

 IUPUI claims and the Board held that McClain was fired for just cause. I.C. 22–4–15–1(d)(2) states that discharge for just cause includes a "[k]nowing violation of a reasonable and uniformly enforced rule of an employer." The burden is upon the employer to establish a prima facie showing of just cause for termination. *Hehr v. Review Bd. of Ind. Emp. Sec. Div.* (1989) Ind.App., 534 N.E.2d 1122, 1124. In order to establish a prima facie showing in the present situation, IUPUI must demonstrate that McClain: "(1) knowingly violated, (2) a reasonable, and (3) uniformly enforced rule." *Id.* at 1125.

The rule upon which McClain's termination was based is found in an employee information receipt signed by McClain when he started working for IUPUI. The sheet reads, in relevant part:

I understand that all of my job assignments include the following:

1. I must use the Sign–In Sheet to sign in and sign out for each shift I work.

2. I must always use my time card to clock in when beginning work and clock out when ending/leaving work (including lunch break) for each shift I work.

3. I will sign my time card at the end of each payroll period thereby stating my agreement with the hours reported on the time card.

Record at 60.

There is no dispute that McClain knew about the policy. At one point in the hearing before the ALJ, he was asked if he knew about the policy "regarding clocking out your own time card[.]" McClain responded that he did. He was also asked "[d]id you have any idea having some[one] else clock out your time card could cause you to lose your job[.]" Again, McClain responded in the affirmative. Record at 43.

McClain later testified that employees clocking each other out did take place at IUPUI. He even stated that Carrasquillo had witnessed such an incident before. He also acknowledged that clocking out another employee was "not the right thing to do"; however, he pointed out that "supervisors at least give you a warning not to do that if they catch you." Record at 46.

Carrasquillo denied that he had ever previously witnessed one employee clocking out another employee.[1] He said that the incident involving McClain and a subsequent incident (in which the employee involved was fired) were the only experiences he had with employees "falsifying their records or their timecards." Record at 51.

There is little doubt that McClain knew about the rule and that the rule was reasonable. We now turn to whether IUPUI estab-

---

**1.** McClain could not remember the names of the employees involved in the previous alleged incident. However, when Mr. Heid, manager of records and unemployment compensation at IUPUI, questioned Carrasquillo at the hearing, he asked about a specific incident in 1994 involving an Erma Butler and Kim Bridgeforth.

lished that the rule in question was uniformly enforced. IUPUI's only witness at the hearing was Carrasquillo, McClain's supervisor. He testified that he knew of no incidents involving one employee clocking out another employee except for the incident in question and one subsequent incident. He also testified that Jones, McClain, and the other two employees involved in the present incident were fired. Finally, when asked if any employee would lose his job if he followed incorrect procedures like McClain, et. al., Carrasquillo responded: "[y]es that ... that's the standard practice. That's ... that's been what the protocol has happened." Record at 34. Mr. Heid also noted in his final statement that it is standard practice to discharge employees "when there's been falsification of time records." Record at 52.

■ From the above, the ALJ concluded that this was a uniformly enforced rule. However, so far as the record reflects, this is the first time ever that an employee has been discharged for having someone else clock out his or her time card. An employer may not establish uniform enforcement of a rule merely by reference to simultaneous and subsequent events.[2] Therefore, any time an employer disciplines the first employee for violating a rule, he may not accurately state that the rule is uniformly enforced.

We noted this problem in dicta in *Hehr,* when we said that "[i]t may well be that absolute adherence to a requirement that uniform enforcement of a rule be proved is inappropriate. For example, it would be impossible for an employer to prove 'uniform' enforcement of a rule which is being enforced for the first time." *Hehr, supra* 534 N.E.2d at 1128, n. 6. Hence, we hold here that an employer will not be required to show uniform enforcement for the first violation of a rule. We will, however, hold the employer to a higher standard regarding the rule itself.

The purpose for requiring an employer to uniformly enforce a rule is twofold. First, it provides that the employer does not discriminate in the enforcement of its rule thereby using the rule as a subterfuge for its true reasons behind dismissal. Second, uniform

enforcement apprises the employee of the employer's intent regarding the rule so that the employee is aware of the consequences of violating the rule. When an employer first discovers a violation of a rule, it is not the discriminatory enforcement scenario which troubles this court because the employer will be held to that standard from then on. Rather, it is the employee's expectations as to his punishment which presents the problem.

■ In order to alleviate the above misgivings, we hold that an employer may, in lieu of showing uniform enforcement on its first discovery of a rule violation, establish a uniform policy by a plain and clear written rule which establishes what does and what does not constitute a violation and the punishment which will accompany a violation. If the employer establishes such a policy and adheres to it, an employee caught violating the rule cannot successfully complain that he was caught unaware and thus fired without just cause.

■ In *KBI, Inc. v. Review Bd.* (1995) Ind.App., 656 N.E.2d 842, we held that when the provisions of a contested rule are disputed, the rule must be reduced to writing and introduced into evidence. *Id* at 848. The purpose is so that this court may make an accurate determination as to the content of the rule. Here the rule in question has been reduced to writing and is before this court. As a matter of law, it does not satisfy the aforementioned test. First, the rule does not clearly state that an employee may not have another employee punch his or her time card, even though such implication may exist. Secondly, the rule is entirely lacking as to any mention of punishment for violation of the rule. Such an omission is fatal.

■ IUPUI may well assert that McClain's own testimony establishes that he was aware that violation of the rule will lead to termination. While McClain does admit that having one employee clock another out could cause one to be fired, he further said that he thought a supervisor would warn the individual first. McClain's testimony is enough to establish that he knew he violated

2. Although, uniform enforcement could be dis- proved with such evidence.

a rule, but it will not circumvent the requirement that the rule clearly establish the prohibition and the punishment.

IUPUI may also respond that it never asserted at the hearing that this was the first violation of the rule. In fact, Mr. Heid, IUPUI's manager of records and unemployment compensation, noted that this was IUPUI practice. The record contains a strong suggestion that this was not the first violation of the rule. In fact, Carrasquillo testified, somewhat inconsistently, that he knew of no other incidents like this—but that it was IUPUI policy. IUPUI established that *Carrasquillo* uniformly enforced the rule, but the question is whether *IUPUI* uniformly enforced the rule. Perhaps Carrasquillo was not the wisest choice as a witness when he knew nothing about the rule's past implementation.

■ The burden was upon IUPUI to establish that the rule was uniformly enforced. It presented no evidence that this was so save Heid's bald assertion. We have previously held that the assertion that "that's customary with us" will not satisfy that burden. *Kuntz v. Review Bd. of Ind. Emp. Sec. Div.* (1979) 180 Ind.App. 490, 389 N.E.2d 342, 345. IUPUI's claim that this is standard practice will likewise not satisfy the burden.

The decision is reversed and remanded for further proceedings not inconsistent with this opinion.

RILEY, J., concurs.

BARTEAU, J., dissents with separate opinion.

BARTEAU, Judge, dissenting.

In order to make a *prima facie* showing of just cause for termination of McClain's employment, IUPUI had to establish that McClain: (1) knowingly violated; (2) a reasonable; and (3) uniformly enforced rule. *Hehr v. Review Bd. of Ind. Emp. Sec. Div.,* 534 N.E.2d 1122, 1124 (Ind.Ct.App.1989). The majority determines that IUPUI failed to establish that its rule regarding falsification of time cards was uniformly enforced. I disagree.

Whether IUPUI's policy was uniformly enforced was a question of fact and the Board's decision regarding all questions of fact is conclusive if supported by the evidence. *Butler v. Review Bd. of Ind. Dept. of Emp. and Training Serv.,* 633 N.E.2d 310, 312 (Ind.Ct.App.1994) (citing *Russell v. Review Bd. of Ind. Dept. of Emp. and Training Serv.,* 586 N.E.2d 942, 948 (Ind.Ct.App. 1992)). Robert L. Heid, manager of records and unemployment compensation for IUPUI, testified that McClain was fired for falsification of his time card and that IUPUI treats falsification of time cards as a suspension subject to discharge in all departments. R. 27. McClain's supervisor also testified concerning uniform enforcement of the rule. When asked whether an employee would lose his job if he followed incorrect time card procedures such as the four employees did, he responded "Yes, that ... that's the standard practice. That's ... that's been what the protocol has happened." R. 34. Additionally, McClain himself testified that he understood the policy regarding clocking out his own time card and that he knew that having someone else clock out his time card could cause him to lose his job. R. 43.[3] The Board adopted the decision of the administrative law judge which found that this evidence established McClain knowingly violated a reasonable and uniformly enforced employer policy. Because the Board's finding of fact is supported by the evidence, this court may not disturb that finding.

The majority cites to *Kuntz v. Review Bd. of Ind. Emp. Sec. Div.,* 180 Ind.App. 490, 389 N.E.2d 342 (1979), as support for its conclusion that the testimony of Heid and the supervisor was insufficient to support a determination that the rule was uniformly enforced. However, in *Kuntz,* the claimant was discharged for failing to provide the employer with medically documented verification of

---

3. The only evidence to the contrary was presented through McClain's own testimony that employees routinely clocked each other out and that the supervisor had observed one such incident, a claim which was denied by the supervisor. However, on review only the evidence favorable to the Board's determination will be considered. *VanCleave v. Review Bd. of Ind. Emp. Sec. Div.,* 517 N.E.2d 1260, 1263 (Ind.Ct.App.1988).

his illness after he had been instructed to do so. The "that's customary with us" statement quoted by the majority was found to be deficient because it was the only evidence presented that the employee was asked to provide the documentation. As the only evidence that the violation was knowing, the statement was insufficient. In contrast, in the case before us, even the claimant, McClain, admits to being aware of the policy and the consequences for violating the policy. This, combined with IUPUI's evidence, supports the Board's determination that the rule was uniformly enforced.