**D.R., Appellant,**

v.

**REVIEW BOARD OF the INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT and FedEx Trade Network, Appellees.**

No. 93A02–1005–EX–522.

Court of Appeals of Indiana.

Dec. 22, 2010.

Publication Ordered Jan. 20, 2011.

Jamie Andree, Indiana Legal Services, Inc., Bloomington, IN, Katherine Rybak, Indiana Legal Services, Inc., Evansville, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Stephanie Rothenberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BROWN, Judge.

D.R.[1] appeals a decision by the Review Board of the Indiana Department of Work-force Development (the "Board") denying her unemployment benefits. D.R. raises one issue, which we revise and restate as whether the record supports the Board's decision to deny D.R. full unemployment benefits. We affirm.

The facts most favorable to the Board's determination follow. On September 16, 2009, FedEx sent a letter to D.R. confirming its offer to her for its "Permanent Part-time Courier/DOT at the BFRA Station in Huntingburg, IN." Appellee's Appendix at 41. The letter stated: "This offer is contingent upon successful completion of a medical examination, drug screen, and all necessary training." *Id.* The letter also requested D.R. to indicate her acceptance of the offer by indicating such and signing the letter, which D.R. did.

D.R. began her employment with FedEx in September 2009. As a part of her training, she was required to pass a defensive driving test. D.R. traveled to Tulsa, Oklahoma, in order to receive training and take the test. She attempted to pass the defensive driving test on two different days while in Tulsa and was unable to pass either time. After returning to Indiana, Jon Willis, D.R.'s boss and the station manager of the local FedEx station in Huntingburg, Indiana, permitted D.R. to drive the truck and practice backing up while he was in the truck. D.R. took the defensive driving test again on November 12, 2009, but was unable to pass the portion of the test which required D.R. to back up the truck correctly.

An inter-office memorandum from FedEx to D.R. dated November 12, 2009, stated that D.R. failed the mandatory training course, the training was required

1. Portions of the record are excluded from public access. Pursuant to Ind. Appellate Rule 9(J) and Ind. Administrative Rule 9(G)(4), we are obligated to "identify the names of the parties and affected persons in a manner reasonably calculated to provide anonymity and privacy...."

for the position of courier, and "Mandatory Training Policy 9–50 states that D.R. was to be placed on a 30 [sic] Personal Leave of Absence" to find another position for which D.R. qualified. Appellee's Appendix at 38. The memorandum stated that D.R. had until December 11, 2009 to choose between (1) being "placed on a 30 day leave of absence without pay," during which time she would "be allowed unlimited Job Change Applications," or (2) immediately resign her position. *Id.* at 14. The memorandum also stated that if D.R. did not choose an option by December 11, 2009, she would "be considered voluntarily resigned." *Id.* D.R. chose to resign from her position.

D.R. filed a claim for unemployment benefits, and on December 18, 2009 a claims deputy for the Indiana Department of Workforce Development issued a Determination of Eligibility which found that D.R. "voluntarily left employment without good cause in connection with the work" and that thus D.R. was "ineligible for benefits in accordance with IC–22–4–15–14 [sic]." *Id.* at 25. D.R. filed an appeal from the deputy's determination and argued that she "did not quit for personal reasons" and that FedEx "made [her] sign a form to resign [her] position because there were no other options to choose from." *Id.* at 26.

On February 12, 2010, a telephonic hearing was held on D.R.'s appeal before an administrative law judge (the "ALJ"), at which evidence was admitted including the testimony of D.R. and Willis.

D.R. testified that she had to fly to Tulsa, Oklahoma, for the defensive driving training and that during the "two flights to get there" she "developed problems with [her] ears," and that her ears "were hurting, ringing, popping, and [became] very clogged up." Transcript at 6. D.R. testified that she informed the instructor that

she was having "a lot of problems with [her] ears after the flight" and stated "So therefore, I struggled with the defensive driving on backing up the W700 truck into a parking space in the serpentine course." *Id.* D.R. testified that she flew back and "the flights back made [her] ear even worse, so [she became] very ill" and was later diagnosed with "ear infections, sore throat, bronchitis, all of that." *Id.* at 6–7. She further testified that she "believe[d] it was no fault of [hers] [ ] unfortunately what happened to [her] on the flight or defensive driving [test]." *Id.* at 8. Later during the hearing, D.R. stated that Willis took her into his office, told her that she was terminated, and that he did not have another job for her. D.R. also stated that when she "questioned him on that option," Willis said that "they have you anyway you go." *Id.* at 17–18.

FedEx introduced one of its policies titled "9–50 Mandatory Training" which stated that "[c]ertain designated positions at FedEx Express have, as a condition of employment, a mandatory training requirement." Appellee's Appendix at 39. Under the Guideline titled "External New Hire," the policy provided:

> If an external new hire is not able to successfully complete the instruction program, he will be given a one-time 30–day personal leave of absence without pay to find another position for which he is qualified. If the employee is unable to secure another position within the 30–day period, the employee is considered to have voluntarily resigned."

*Id.*

On February 22, 2010, the ALJ issued a decision which affirmed the claims deputy's determination that D.R. receive no unemployment benefits. In its decision, the ALJ concluded that D.R. "did not voluntarily quit her position with [FedEx]," that D.R.'s "only option was to resign from

her position or be placed on a thirty day leave of absence without pay," that "[a]lthough [D.R.] had an opportunity to apply for other positions, there was no guarantee that [she] would be rehired," and that D.R.'s discharge "was a constructive discharge." *Id.* at 43. The ALJ's decision also stated that FedEx bore the burden of establishing a *prima facie* showing of just cause for termination, that the definition of discharge for just cause includes "any breach of duty in connection with the work which is reasonably owed an employer by an employee" under Ind.Code § 22–4–15–1(d)(8), and that "by failing to meet the training levels required, [D.R.] no longer had the proper qualifications to meet the job requirements." *Id.* The ALJ therefore concluded that D.R. "breached a duty reasonably owed to [FedEx] and that [D.R.] was discharged for just cause as defined by Ind.Code § 22–4–15–1." *Id.* D.R. appealed the decision of the ALJ.

On April 8, 2010, the Board adopted and incorporated by reference the findings of fact and conclusions of law of the ALJ and affirmed the ALJ's decision.

■ The issue is whether the record supports the Board's decision to deny D.R. full unemployment benefits. The Indiana Unemployment Compensation Act provides that "[a]ny decision of the review board shall be conclusive and binding as to all questions of fact." Ind.Code § 22–4–17–12(a). However, Ind.Code § 22–4–17–12(f) provides that when the Board's decision is challenged as contrary to law, the reviewing court is limited to a two part inquiry into: (1) "the sufficiency of the facts found to sustain the decision;" and (2) "the sufficiency of the evidence to sustain the findings of facts." *McClain v. Review Bd. of Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314, 1317 (Ind.1998), *reh'g denied.* The Indiana Supreme Court clarified our standard of review of the Board's decisions in *McClain:*

Review of the Board's findings of basic fact [is] subject to a "substantial evidence" standard of review. In this analysis the appellate court neither reweighs the evidence nor assesses the credibility of witnesses and considers only the evidence most favorable to the Board's findings.

The Board's conclusions as to ultimate facts involve an inference or deduction based on the findings of basic fact. These questions of ultimate fact are sometimes described as "questions of law." They are, however, more appropriately characterized as mixed questions of law and fact. As such, they are typically reviewed to ensure that the Board's inference is "reasonable" or "reasonable in light of [the Board's] findings." The term "reasonableness" is conveniently imprecise. Some questions of ultimate fact are within the special competence of the Board. If so, it is appropriate for a court to exercise greater deference to the "reasonableness" of the Board's conclusion.... However, not all ultimate facts are within the Board's area of expertise. As to these, the reviewing court is more likely to exercise its own judgment. In either case the court examines the logic of the inference drawn and imposes any rules of law that may drive the result. That inference still requires reversal if the underlying facts are not supported by substantial evidence or the logic of the inference is faulty, even where the agency acts within its expertise, or if the agency proceeds under an incorrect view of the law.

*Id.* at 1317–1318 (citations and footnotes omitted).

■ In Indiana, an employee is ineligible for unemployment benefits if he or

she is discharged for just cause. *Nersessian v. Review Bd. of Ind. Dep't of Workforce Dev.*, 798 N.E.2d 480, 482 (Ind.Ct. App.2003); Ind.Code § 22–4–15–1.[2] The burden was upon FedEx to establish a *prima facie* case showing just cause, after which, the burden shifted to D.R. to produce rebuttal evidence. *Id.*

Ind.Code § 22–4–15–1(d) provides:

"Discharge for just cause" as used in this section is defined to include but not be limited to:

(1) separation initiated by an employer for falsification of an employment application to obtain employment through subterfuge;

(2) knowing violation of a reasonable and uniformly enforced rule of an employer, including a rule regarding attendance;

(3) if an employer does not have a rule regarding attendance, an individual's unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness;

(4) damaging the employer's property through willful negligence;

(5) refusing to obey instructions;

(6) reporting to work under the influence of alcohol or drugs or consuming alcohol or drugs on employer's premises during working hours;

(7) conduct endangering safety of self or coworkers;

(8) incarceration in jail following conviction of a misdemeanor or felony by a court of competent jurisdiction; or

(9) any breach of duty in connection with work which is reasonably owed an employer by an employee.

D.R. argues that "[a]t no time did she perform her work duties other than in good faith and to the best of her abilities." Appellant's Brief at 9. D.R. argues that "[i]t is true that D.R. knew she would be discharged if she were unable to complete the test" and that "[t]here is, however, a fundamental difference between knowingly violating a duty owed to an employer and simply being unable to perform despite all good faith efforts to the contrary." *Id.* D.R. argues that "[t]here was never any evidence that D.R. was capable of completing the driving examination" and that "[t]he only evidence we have is that she practiced diligently and attempted three times to back up a truck on a serpentine course, requesting another chance after every attempt." *Id.* at 11. D.R. also argues that an employee discharged through no fault of her own is entitled to benefits. The State argues that the evidence supports the determination of the Board and that D.R. "focuses her argument on the fact that it was not her intent to not pass the driving test; however, [FedEx] had a duty to not endanger the public. . . ." Appellee's Brief at 7.

Here, evidence and testimony presented at the February 22, 2010 hearing shows that D.R. was offered employment contingent upon her successful completion of a defensive driving test. The evidence shows that D.R. attempted to pass the driving test on two different days while in Oklahoma and once again in Indiana, and that D.R. was unable to pass the test on

---

2. Ind.Code § 22–4–15–1(a) provides in part: [A]n individual who has voluntarily left the individual's most recent employment without good cause in connection with the work *or who was discharged from the individual's most recent employment for just cause* is ineligible for waiting period or benefit rights for the week in which the disqualifying separation occurred and until the individual has earned remuneration in employment equal to or exceeding the weekly benefit amount of the individual's claim in each of eight (8) weeks. (Emphasis added).

any of those attempts. The evidence further shows that Willis, the station manager, testified that "before [D.R.] could go any further she had to pass the driving test," that he "could not put her on the road," and that "the dictate is ... that nobody goes on the road until the[y] pass the safe driving test." Transcript at 16. The evidence also shows that D.R.'s final attempt to successfully complete the driving test was on November 12, 2009, and that D.R. met with Willis and was given the inter-office memorandum on that date regarding her termination. FedEx carried its burden by showing that D.R. had been asked to successfully complete the driving exam and failed to meet that expectation.

As to D.R.'s problems with her ears, the ALJ asked D.R. if she had submitted any medical documentation showing that the "ear issue was the direct cause of [D.R.] being unable to back this truck up," and D.R. testified that she had sent information "on [her] doctor's visit" and that she did not "believe it states it was directly." *Id.* at 8. Given the evidence as set forth in the record, and noting that we neither reweigh the evidence nor assess the credibility of witnesses and consider only the evidence most favorable to the Board's findings, we cannot say that the determination of the ALJ and Board that D.R. did not carry her burden to produce rebuttal evidence was unreasonable.

The record indicates just cause for the termination of D.R.'s employment. *See Nersessian,* 798 N.E.2d at 482–483 (holding that the record indicated just cause for the termination of the employee/appellant's employment under Ind.Code § 22–4–15–1 and noting that the employer carried its burden by showing that the employee had been asked to obtain a license shortly after he was hired and failed to

meet that expectation); *cf. Flick v. Review Bd. of Ind. Emp't Sec. Div.,* 443 N.E.2d 84, 86 (Ind.Ct.App.1982) (concluding, on a meager record, that it was impossible to determine whether driving was a necessary part of the employee/appellant's job so that that the employee's dismissal for failure to have a valid driver's license was a discharge for just cause under the meaning of Ind.Code § 22–4–15–1, noting that the evidence at the hearing did not disclose whether or not driving was a requirement of the employee's job or why the employee was permitted to work for nine months if driving was indeed a requirement of his employment, and reversing for a new hearing).

D.R. cites to *Hehr v. Review Bd. of The Ind. Emp't Sec. Div.,* 534 N.E.2d 1122, 1126 (Ind.Ct.App.1989), and argues that the breach of duty ground for just discharge is an amorphous one and that the common thread in *Hehr* and cases citing it "is the intentional behavior by the employee that is contrary to the employer's interests or violates the employer's rule." Appellant's Brief at 9. *Hehr* involved a breach of duty owed to an employer related to unlawful behavior and intentional damage or attempted damage to property. 534 N.E.2d at 1126–1127. These behaviors may constitute a breach of duty to the employer. *Id.* However, as previously discussed, Ind.Code § 22–4–15–1(d) provides a non-exclusive list which may constitute "discharge for just cause." We recognize that, as stated in *Hehr,* whether a person breaches a duty owed to the employer "is a very fact-sensitive determination which must be made on a case by case basis." *Id.* at 1127. We cannot say that *Hehr* and the other cases cited by D.R. are instructive or persuasive under the facts of this case or require reversal.[3]

**3.** D.R. also cites to several cases from other

jurisdictions and argues that "courts in a

For the foregoing reasons, we affirm the determination of the Board.

Affirmed.

RILEY, J., and ROBB, J., concur.

### ORDER

Appellee, the Review Board of the Indiana Department of Workforce Development, by counsel, has filed a "Motion to Publish by appellee Review Board."

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. Appellee's "Motion to Publish by Appellee Review Board" is GRANTED.

ROBB, C.J., RILEY, BROWN, JJ., concur.

number of jurisdictions have held that a claimant's good faith, diligent attempt and failure to pass a training or certification test required for employment is not misconduct." Appellant's Brief at 10. Our review of those cases indicates, as pointed out by D.R., that most interpreted specific state law provisions which provided that an individual was disqualified for benefits if the individual was discharged for misconduct. *See Texas Workforce Comm'n v. City of Houston*, 274 S.W.3d 263, 267 (Tex.Ct.App.2008) (noting that an individual is disqualified for benefits if the individual was discharged for misconduct under Texas statute and interpreting the term "misconduct"); *Washington Reg'l Ctr. Bd. of Review v. Dir., Emp't Sec. Dep't*, 64 Ark.App. 41, 44, 979 S.W.2d 94, 96 (1998) (interpreting the term "misconduct" under Arkansas law); *Caro v. Florida Unemployment Appeals Comm'n*, 734 So.2d 1077, 1078 (Fla.Ct.App. 1999) (interpreting the term "misconduct" under Florida statutory provisions). As discussed above, however, Ind.Code § 22–4–15–1(d) provides a non-exclusive list which may constitute "discharge for just cause," including acts which may not necessarily constitute misconduct, especially as that term is interpreted in other jurisdictions.