Bedros N. NERSESSIAN, Appellant,

v.

REVIEW BOARD OF the INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT and Maple Leaf Duck Farms, Inc., Appellees.

No. 93A02–0302–EX–94.

Court of Appeals of Indiana.

Nov. 13, 2003.

Ronald E. James, Benson, Pantello, Morris, James & Logan, Fort Wayne, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

**OPINION**

MATHIAS, Judge.

The Review Board of the Department of Workforce Development ("Board") denied Dr. Bedros Nersessian ("Dr. Nersessian") full unemployment benefits. Dr. Nersessian appeals, raising several issues, which we consolidate as: Whether the record supports the decision to deny Dr. Nersessian full unemployment benefits. Concluding the decision was supported by the record, we affirm.

**Facts and Procedural History**

Maple Leaf Duck Farms ("Maple Leaf") hired Dr. Nersessian as a full-time salaried employee in 1990. Dr. Nersessian was Maple Leaf's head of veterinarian services and worked in Indiana throughout his tenure at Maple Leaf.

After Maple Leaf hired Dr. Nersessian, it asked him to obtain an Indiana veterinary license. Dr. Nersessian obtained a Wisconsin veterinary license in 1992. Later that year, Dr. Nersessian applied for an Indiana license, requesting an examination waiver on the basis of his Wisconsin license. However, Dr. Nersessian's application was denied on September 24, 1992, as he had not practiced the requisite five years to waive the examination requirement. In February of 2002, Maple Leaf, before the dispute at issue arose again, requested Dr. Nersessian to obtain an Indiana veterinary license.

Dr. Nersessian reported to Dr. Dan Shafer ("Dr. Shafer") at Maple Leaf. In March of 2002, Dr. Shafer received an invoice from Bayer Pharmaceutical ("Bayer") indicating that Bayer was sending Maple Leaf's antibiotics to its Wisconsin business address rather than to its Indiana farms. When Dr. Shafer asked Bayer why the antibiotics were not sent to Indiana, Bayer informed him that Dr. Nersessian was not licensed in Indiana, and therefore, Bayer was not permitted to ship pharmaceuticals to Indiana.

Dr. Shafer then asked Dr. Nersessian why Bayer was sending pharmaceuticals to Wisconsin. Dr. Nersessian informed Dr. Shafer that Bayer was just being difficult and sending the antibiotics to Wisconsin based upon his Wisconsin veterinary license. Dr. Nersessian also informed Dr. Shafer that he had reciprocity in Indiana. Dr. Shafer contacted the Indiana Board of Veterinary Medical Examiners and learned that Dr. Nersessian had never been granted an Indiana license and that Indiana does not extend reciprocity.

After roughly two weeks of communication regarding this matter, Dr. Nersessian informed Dr. Shafer he would not talk to him and instructed him to communicate through Maple Leaf's human resources department. Maple Leaf's human resources department sent Dr. Nersessian a suspension letter dated May 3, 2002, which stated:

Our research indicates that you are not licensed in the state of Indiana; therefore, it is not legal for you to practice veterinary medicine in the State of Indiana. Due to legal requirements, and under advisement of our legal counsel, we cannot allow you to practice veterinary medicine. As you recall, Dr. Dan Shafer sent you an email, dated March 25, 2002, requesting that you submit documentation on your license to practice Veterinary Medicine in the state of Indiana, by April 22, 2002. Accordingly, you submitted a response on

April 23, 2002, stated that you had exemption in state of Indiana, due to a reciprocity agreement with the State of Wisconsin Veterinary Licensing Board. Our lawyers have been unable to confirm this.

Appellant's App. p. 43. Maple Leaf terminated Dr. Nersessian's employment on May 8, 2002. On September 24, 2002, Dr. Nersessian obtained his Indiana veterinary license.

On June 7, 2002, Dr. Nersessian was determined to be eligible for full unemployment benefits. Maple Leaf appealed the decision to award full benefits. An administrative law judge conducted an evidentiary hearing on November 15, 2002, and reduced Dr. Nersessian's maximum benefit amount by twenty-five percent.

Dr. Nersessian appealed the reduction of his unemployment compensation with the Office of Indiana Work Force Development Appeals Division. The Appeals Division affirmed. Dr. Nersessian now appeals to this court.

### Discussion and Decision

When reviewing a board's decision to deny full unemployment compensation,

[B]asic facts are reviewed for substantial evidence, legal propositions are reviewed for their correctness. The best that can be said for ultimate facts or "mixed questions [of law and fact]," as a general proposition, is that the reviewing court must determine whether the Board's finding of ultimate fact is a reasonable one. The amount of deference given to the Board turns on whether the issue is one within the expertise of the Board.

*McClain v. Review Bd. of the Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314, 1318 (Ind.1998).

In Indiana, an employee is ineligible for unemployment benefits if he or she is discharged for just cause. Ind.Code § 22–4–15–1 (1991). The burden was upon

Maple Leaf to establish a prima facie case showing just cause, after which, the burden shifted to Dr. Nersessian to produce rebuttal evidence. *See Stanrail Corp. v. Review Bd. of the Dep't of Workforce Dev.*, 735 N.E.2d 1197, 1202–03 (Ind.Ct.App. 2000), *trans. denied.*

In Indiana, just cause includes, but is not limited to:

(1) separation initiated by an employer for falsification of an employment application to obtain employment through subterfuge;

(2) knowing violation of a reasonable and uniformly enforced rule of an employer;

(3) unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness;

(4) damaging the employer's property through willful negligence;

(5) refusing to obey instructions;

(6) reporting to work under the influence of alcohol or drugs or consuming alcohol or drugs on employer's premises during working hours;

(7) conduct endangering safety of self or coworkers; or

(8) incarceration in jail following conviction of a misdemeanor or felony by a court of competent jurisdiction or for any breach of duty in connection with work which is reasonably owed an employer by an employee.

Ind.Code § 22–4–15–1(d).

In the case at bar, Maple Leaf carried its burden by showing that Dr. Nersessian had been asked to obtain an Indiana veterinary license shortly after he was hired and failed to meet that expectation. Appellant's App. pp. 12, 21. *See also* Ind. Code §§ 22–4–15–1(d)(5) and 22–4–15–1(d)(8).

Dr. Nersessian raises several arguments, which assert that his failure to obtain an Indiana license did not constitute

just cause for the termination of his employment. First, Dr. Nersessian notes Maple Leaf (1) knew he did not have a license when he was hired and (2) allowed him to practice during his tenure. Br. of Appellant at 14. However, employers regularly hire employees with the expectation that the employee will fulfill a future obligation. The fact that Maple Leaf did not promptly discover Dr. Nersessian's failure to obtain an Indiana veterinary license in 1992 does not mean that Maple Leaf waived that requirement.

Second, Dr. Nersessian asserts that Maple Leaf failed to present a uniformly enforced rule requiring such a license. *Id.* However, the uniformity of a rule's enforcement is only one factor enumerated under Indiana Code section 22–4–15–1(d). In addition, the applicability of the uniformly enforced rule factor is questionable when dealing with a highly specialized occupation, such as Dr. Nersessian's.

█ Third, Dr. Nersessian notes that he did nothing illegal by performing his duties at Maple Leaf without a valid veterinary license. Br. of Appellant at 14–15 (citing Ind.Code § 15–5–1.1–9(6) (1997)). However, Maple Leaf was not required to prove it was illegal for it to use Dr. Nersessian's services; it was merely required to show that it had a reasonable basis for requiring Dr. Nersessian to obtain such a license. The record is clear that requiring Dr. Nersessian to possess an Indiana veterinary license would be beneficial to Maple Leaf—the benefit of not having its antibiotics shipped to Wisconsin rather than Indiana is only one such example.

Fourth, Dr. Nersessian claims that the only direct evidence indicating he was required to obtain a veterinary license was evidence indicating that he was "only" required to obtain a veterinary license in a state that Maple Leaf had flocks. Br. of Appellant at 15. However, Dr. Nersessian himself stated "they asked me also that, that, uh, if I may, I be licensed in Indiana," and other testimony indicated that Maple Leaf requested Dr. Nersessian to obtain an Indiana veterinary license when he was hired. Tr. pp. 12, 21. This evidence adequately supports the conclusion that Maple Leaf requested Dr. Nersessian to obtain an Indiana veterinary license.

█ Fifth, Dr. Nersessian notes that Maple Leaf failed to demonstrate a written rule requiring him to obtain an Indiana veterinary license. Br. of Appellant at 16–17. However, in this circumstance, there is no need for a written rule. The purpose of a writing is to prove that Maple Leaf made its requirements known to Dr. Nersessian. Dr. Nersessian's admission of Maple Leaf's initial request and his attempt to obtain an Indiana veterinary license in 1992 indicate no confusion as to whether Dr. Nersessian received and understood Maple Leaf's instruction.

Finally, Dr. Nersessian contends that Maple Leaf did not give him enough time to obtain an Indiana veterinary license. Br. of Appellant at 20. However, even ignoring the fact that Dr. Nersessian was told he needed to obtain an Indiana veterinary license well over ten years before the termination of his employment, Dr. Nersessian's behavior after being told he needed an Indiana veterinary license once again in February of 2002 was not indicative of an intent to cooperate and obtain such a license.

### Conclusion

The record indicates just cause for the termination of Dr. Nersessian's employment.

Affirmed.

NAJAM, J., and ROBB, J., concur.