**Walter L. VanCLEAVE, Appellant,**

**v.**

**REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, John C. Mowrer, Chairman, Joe A. Harris, Member, As Members of and constituting the Review Board of the Indiana Employment Security Division, and Indianapolis Water Company, Appellees.**

No. 93A02-8707-EX-281.

Court of Appeals of Indiana,
Third District.

Jan. 27, 1988.

---

1. My conclusion that, as a matter of law, Gollnicks incurred no premises liability remains unchanged.

Mary Therese Wolf, Dan Bradford, Legal Services Organization of Indiana, Inc., Indianapolis, for appellant.

Michael R. Maine, Elizabeth T. Young, Baker & Daniels, Indianapolis, for appellee Indianapolis Water Co.

STATON, Judge.

Walter L. VanCleave appeals the decision of the Review Board of the Indiana Employment Security Division (Review Board) reversing the appeals referee and denying him unemployment benefits. This appeal raises three issues which we consolidate and restate as:

1) Whether the finding of the Review Board that VanCleave violated a reasonable and uniformly enforced rule is contrary to law and to the evidence.[1]

2) Whether the finding of the Review Board that VanCleave breached a duty owed to his employer is contrary to law and to the evidence.

Affirmed.

VanCleave was employed by the Indianapolis Water Company (IWC) from August, 1977 to February, 1986, when he was discharged for substandard work performance. The relevant portions of the Review Board's findings are as follows:

For six years prior to his discharge, Van Cleave was a Customer Serviceman or performed job duties essentially the same as a Customer Serviceman. (R. 136.) Van Cleave's job duties included executing turn-on and turn-off service orders and performing paperwork and other duties to document service provided to IWC's customers; informing the Company of the status of water service required for any account (Emp. Exs. 2, 3, R. 16, 19–21.) The completion of paperwork was a particularly important function of his job, and he was reminded of that fact frequently during his employment. (Emp. Ex. 3; R. 19–20, 25, 173–74.)

VanCleave knew and understood the requirements of performing his job as a Customer Serviceman. He reviewed his Job Analysis when he bid into the position, and a copy of it was available to him through his Union. (Emp. Ex. 2; 19–20, 57, 174, 177, 179.) During his employment at IWC, VanCleave received extensive training in the performance of his job duties. He received at least 210 days of formalized training (R. 138–39, 177–78, 180), and he was given additional instruction and guidance by supervisory person-

1. We need not discuss this issue as issue #2 is dispositive of the case.

nel in the normal course of his employment. (R. 58, 173–74.) Additionally, whenever he was disciplined for poor job performance, he received an explanation and further guidance in this duties and in the standard of performance expected of him by both IWC officials *and* his Union representatives. (R. 165.) If he had a question about his job duties or IWC procedures, he would speak with his Assistant Supervisor. (R. 146.)

VanCleave never indicated to the Company or the Union that he did not know or understand the requirements of his job, and although he had ample opportunity to seek additional explanation, instruction or training in his job duties, he never requested it. (R. 145, 174, 174A, 178.) Despite VanCleave's knowledge and understanding of his job duties and the standard of performance expected of him, he persistently made mistakes and displayed an intentional disregard of his obligations to IWC. In the last two years of his employment at IWC, Van Cleave regularly violated IWC's rule against substandard work performance. (Emp. Ex. 5; R. 34–35.)

VanCleave received a written warning on August 9, 1984, for at least seven instances of substandard work performance. (Empl. Ex. 10: R.50–51.) These included failure to complete an order (R. 51); failure to follow procedures for checking his truck before going out into the field (R. 50); failure to timely turn in monies collected for paid orders (R. 50); falsifying records by marking turnoff orders as complete without ever turning off the water (R. 50); improper marking of his paperwork by failing to mark "no charge" on several computer order cards which resulted in customers being improperly billed: [sic] and failure to restore water service to a customer (R. 50); and failure to adhere to the Company's turn-off procedures despite specific warnings from his supervisor (R. 51). Despite the August 9, 1984, warning, VanCleave continued to perform substantial [sic] work. On September 28, 1984, he received a three-day suspension for falsifying company records by marking as complete seven orders which were not in fact completed. (Empl. Ex. 9; R. 48–49).

The three-day suspension failed to result in improved job performance. On four occasions, October 27, 1984, November 11, 1984, January 7, 1985, and January 28, 1985, VanCleave failed to complete his daily timesheets. (Empl. Ex. 8: R. 47.) For the period January 2, 1985, to January 24, 1985, VanCleave's daily worksheets contained errors for 11 of those 17 days and there was a complaint about VanCleave's appearance. (*Id.*) In addition, on January 24, 1985, Van Cleave was found to be out of his work area. (*Id.*) On January 30, 1985, VanCleave was suspended for five (5) days for his continued poor work performance. (*Id.*)

VanCleave was again suspended from work without pay on March 8, 1985, for having driven with a suspended driver's license since May 16, 1984, which is a violation of Rule 2.210 of the Employee Guidance Policy and a breach of the duty he owed to the Company to maintain a good driving record. (Empl. Ex. 7; R. 46.)

On December 12, 1985, VanCleave was caught by his supervisor out of his work area during work hours. (Empl. Ex. 6; R. 44–45.) VanCleave was well aware of but did not follow the procedure for obtaining permission to leave his work area. (*Id.*) For this offense, VanCleave was suspended from work three days, January 7–9, 1986. (R. 44.)

VanCleave failed to come to work on Monday, January 6, 1986, claiming he had misread his suspension letter (Empl. Ex. 5: R. 35.), and the day he returned from that suspension, January 10, 1986, he continued his blatant inattention to his job duties. (Empl. Ex. 5: R. 34.)

On January 10, 1986, in attempting to turn on water service, VanCleave broke the head off the valve and made no effort to determine if the water service to the customer had been turned on. (R. 34, 99, 117–18, 120.) The water service had not been turned on, but VanCleave marked the computer order card for the account as service turned on. (Empl. Ex.

12: R. 117–18, 122.) As a result, the customer was without water for several days. (Empl. Ex. 5, R. 34.)

On January 14, 1986, VanCleave again marked on a service turn-on order card and his daily log sheet ("DT–97") that he had turned the water on at 1113 Dearborn when, in fact, water service was not turned on. (R. 34, 123–25, 171.)

Also on January 14, 1986, VanCleave had a turn-on order for 2830 East 18th Street which he did not list on DT–97, although he marked the computer order card as service completed. (Emp. Exs. 5, 13; R. 34, 129.) The work, however, was not completed and, as a result, the customer was without water. (R. 34.)

Two days later, on January 16, 1986, VanCleave had a service turn-off order for 6208 Windsor. Despite VanCleave's admission that "I'm real familiar with that area" (R. 108), he turned the water off at 6208 Nimitz Drive, requiring an Emergency serviceman to restore service at night. (R. 35.) His daily log sheets clearly showed that the proper turn-off address was 6208 Windsor. (R. 137.)

Shortly thereafter, on January 23, 1986, VanCleave repeated this error. (R. 35.) He received a service turn-off order for 1501 East Tabor Street, but he erroneously turned the water service off at 1501 Kelly Street. (*Id.*)

\* \* \* \* \* \*

VanCleave's failure to bring his level of job performance up to a minimum acceptable standard was not attributable to lack of knowledge of his job duties or confusion as to what was expected of him. VanCleave received extensive and repetitive training in both IWC and his Union. His errors and mistakes could not have been prevented or remedied by additional guidance, training or by supplying him with a copy of his job classification. (R. 108, 139.)

(Record at 265–267.)

The Review Board concluded that VanCleave was discharged for just cause pursuant to IC § 22–4–15–1(d)(8).[2]

When we review a decision of the Review Board, we do not reweigh the evidence. Only that evidence favorable to the Review Board's determination is considered. The decision of the Review Board is conclusive and binding as to all questions of fact. The extent of our review is to determine if the evidence supports the Review Board's findings of fact and if the conclusions of law are reasonable based on those findings. *Wampler v. Review Bd. of Ind. Emp. Sec. Div.* (1986), Ind.App., 498 N.E.2d 998, 1000.

VanCleave first argues that the Review Board applied an erroneous standard to determine whether he breached a duty to IWC. *Wampler* sets out the applicable standard:

'Fault', or 'just cause,' as used in the Employment Security Act, means failure or volition, and does not mean something blameworthy, culpable, or worthy of censure. . . .

Whether unemployed persons are without fault must be determined upon the facts and circumstances of the individual case. Determination of cause is a question of fact. It is conduct evidencing such wilful or wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has a right to expect of his employee, or *a carelessness or negligence of such a degree or recurrence* as to manifest equal culpability, wrongful intent, or evil design, or to show an intentional or substantial disregard of the employer's interest, or of the employee's duties or obligation to this employer. *Wakshlag v. Review Board* (1980) 1st Dist.Ind.App., 413 N.E.2d 1078, 1083 (Citations omitted; emphasis in original).

*Supra* at 1001 (footnotes omitted). Additionally, there is no need for the Review Board to make findings of fact as to subjective intent if discharge is reasonably justified on the employee's objective behavior. *Wakshlag, supra,* at 1082.

---

2. Discharge for just cause includes any breach of duty in connection with work which is reasonably owed an employer by an employee.

The Review Board found that Van-Cleave's conduct evidenced a "carelessness and negligence of such a degree *and* recurrence as to show his deliberate and substantial disregard of the duties and obligations he owed to IWC to perform his job to the best of his ability and to refrain from conduct not in IWC's best interest." (Record at 269.) VanCleave contends that the Review Board erred because it relied solely on objective behavior which cannot be a substitute for subjective intent unless it manifests an intentional or substantial disregard of the employer's interest. We cannot conclude the Review Board applied the wrong standard when it specifically found that VanCleave's conduct evidenced such disregard.

What VanCleave is really arguing is that the evidence does not support such a conclusion because he presented evidence to justify and explain some of the errors he made in the performance of his work. Further, he argues that the Review Board must accept his testimony because the appeals referee specifically found him to be a credible witness.[3] This argument presents the same issue that was raised in *Wampler:* whether the Review Board may substitute its judgment of credibility for that of the referee who heard the testimony. *Supra,* at 1000. The court in *Wampler* did not reach this issue because it concluded that the Review Board's decision was not predicated upon an assessment of credibility, rather, the explanations were insufficient as a matter of law in the face of overwhelming evidence of continuing disregard for the legitimate interests of the employer. *Id.* at 1001.

For the same reason, we need not reach this issue. The record shows, and the Review Board found, that VanCleave persisted in a pattern of substandard work performance even though he knew what his duties were, had received training and assistance,[4] and had been disciplined for substandard work performance.

In the month prior to his termination, VanCleave failed to come to work one day, twice reported that water service had been turned on when it had not, and twice turned off water service at the wrong house. In the seventeen months prior to that month of substandard work performance, VanCleave had been disciplined numerous times for substandard work performance and other violations. This is sufficient evidence of a continuing disregard of the interests of IWC to outweigh Van-Cleave's explanations of a few of his errors.

VanCleave also argues that the Review Board based its decision on erroneously admitted hearsay evidence. IWC's Exhibits Numbered Six through Ten were letters of disciplinary action that had been sent to VanCleave from August, 1984 to December, 1985. VanCleave contends that IWC did not establish a sufficient foundation to admit the exhibits as business record exceptions to the hearsay rule. We need not determine whether a sufficient foundation was laid because any error that might have occurred would have been harmless. Exhibits Numbered Six through Ten were merely cumulative evidence of the disciplinary actions taken against Van-Cleave as listed in IWC's Exhibit Numbered Five, the discharge letter sent to VanCleave. Although VanCleave objected at the hearing to the portion of Exhibit Numbered Five referring to prior disciplinary action, he has not preserved any objection to that exhibit on appeal. Thus, the Review Board did not err by considering the past disciplinary actions taken against VanCleave.

The Review Board's decision denying VanCleave unemployment benefits is affirmed.

CONOVER and NEAL, JJ., concur.

---

3. The Review Board made its decision on the record of the hearing before the appeals referee without accepting additional evidence.

4. VanCleave argues that the Review Board erroneously found that he had been extensively trained in his job. A review of the record shows that he is merely asking us to reweigh the evidence. This we cannot do.