# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**JUSTIN E. ENDRES**
New Albany, Indiana

ATTORNEYS FOR APPELLEE
REVIEW BOARD:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**STEPHANIE ROTHENBERG**
Deputy Attorney General
Indianapolis, Indiana

FILED

Aug 31 2012, 8:41 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

SEABROOK DIECKMANN & NAVILLE, ) 
INC., ) 
) 
Appellant, ) 
) 
vs. ) No. 93A02-1202-EX-100
) 
REVIEW BOARD OF THE INDIANA ) 
DEPARTMENT OF WORKFORCE ) 
DEVELOPMENT and MONICA HILBERT, ) 
) 
Appellees. ) 

APPEAL FROM THE REVIEW BOARD OF THE
INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT
Cause No. 11-R-5955

**August 31, 2012**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Seabrook Dieckmann & Naville, Inc. ("Employer") appeals a decision by the Review Board of the Indiana Department of Workforce Development (the "Board") in favor of Monica Hilbert ("Employee") with respect to Employee's claim for unemployment benefits. Employer raises several issues which we restate as whether the Board erred in concluding that Employee's employment was not terminated for just cause. We reverse and remand.

The relevant facts follow. Employee worked as a full-time clerical worker for Employer, a funeral home business, from September 2006 until December 2, 2010, when Employee was discharged for poor work performance and unprofessional conduct. Employee filed a claim for unemployment benefits, and on December 27, 2010, a deputy with the Board determined that Employee was discharged for just cause due to a work-related breach of duty.

Employee appealed, and an administrative law judge ("ALJ") held a hearing and issued a decision on February 14, 2011, reversing the deputy's determination and finding that Employer failed to show that Employee was discharged for just cause. Following an appeal by Employer the Board entered a decision on March 29, 2011, which summarily affirmed the ALJ's decision. Employer appealed to this court, this court issued an order of remand, and pursuant to this court's order the Board vacated the decisions of the ALJ and Board and remanded the case to the appellate division for a *de novo* hearing on the merits of Employee's claim for benefits.

On December 1, 2011, a second hearing was held before an ALJ at which Employee, her husband, and Employer's representatives were present in person. In a

2

decision issued on December 5, 2011, the ALJ reversed the deputy's initial determination dated December 27, 2010. The ALJ's decision provided in part:

> **FINDINGS OF FACT:** The Employer is a funeral home. [Employee] worked for the Employer from September of 2006 until December 2nd, 2010, as a full-time clerical worker. [Employee] was discharged from employment. The cited reason is poor job performance in the form of a plethora of proofreading mistakes on printed materials for distribution at funerals, rudeness, insubordination, and personality conflicts with co-workers.
>
> For roughly four years and two months [Employee] occasionally made some clerical errors while performing work for the Employer. Some of these errors, mistaken facts or misspellings on printed materials, caused the waste of a large amount of the printed materials and extra money to be spent to replace the materials. Employees in [Employee's] position are expected to make some such mistakes.
>
> The Employer began to document mistakes that were made in the office on or about November 8th, 2009. Employer's Exhibit Three. The documentation does not evidence that [Employee] was responsible for all of the listed mistakes. It is possible that at least some of the listed errors were committed by other employees.
>
> For roughly four years and two months, two of [Employee's] co-workers found her to be rude, uncooperative, unprofessional, and did not enjoy her presence in the office. [Employee's] attitude, demeanor, and job performance remained the same during the entire period of employment.
>
> The Employer documented one meeting with [Employee] concerning her job status. The date of this meeting is listed as January 26th, 2010. Employer's Exhibit Three. The content of the meeting is listed as follows: "Employee . . . is told that it is her job to print all of the necessary paperwork associated with respective death call and that if she wasn't going to get that done, she would be terminated . . . ." Id. No meetings about the errors, demeanor, or insubordination cited as the reason for discharge were documented. [Employee] asserted no such meetings occurred while the Employer asserted such meetings did occur. The Administrative Law Judge determines the Employer's testimony is not credible on this subject.
>
> **CONCLUSIONS OF LAW:** . . . .

* * * * *

3

The Employer proved [Employee] was possibly difficult to work with and a prickly character, but the Employer did not prove [Employee] committed all of the errors it alleged [Employee] committed. Further, the Employer did not prove [Employee] was aware that her job was in jeopardy for proofreading errors, insubordination, or unprofessional demeanor, which were cited as the main reasons for discharge. The Employer acquiesced to the same performance from [Employee] for over four years. If [Employee's] performance and attitude was really as poor as the Employer alleged, and [Employee's] mistakes caused such a large financial liability, a reasonable Employer would have discharged [Employee] much sooner. Therefore, the Administrative Law Judge concludes that [Employee] was not aware her job was in jeopardy for the cited reasons of discharge, did not commit all of the alleged breaches of duty cited as the cumulative reason for discharge, and was not discharged for just cause pursuant to Ind. Code § 22-4-15-1.

Appellant's Appendix at 3-4; Exhibits at 67-68. Employer appealed, and the Board summarily affirmed the decision of the ALJ without a hearing. Employer now appeals the decision of the Board.

The issue is whether the Board erred in concluding that Employee's employment with Employer was not terminated for just cause. Employer maintains that the decisions of the ALJ and Board are contrary to law, use an erroneous legal standard, are against the undisputed and overwhelming evidence, and are not supported by substantial evidence. Employer specifically argues that the undisputed evidence compels a finding of dismissal for just cause due to Employee's unprofessional behavior, name calling, use of racial slurs, refusal to obey instructions, a pattern of errors, and leaving work early, and that Employer did not acquiesce in Employee's actions. The Board asserts that the ALJ presided over an in-person hearing and was in a position to make credibility determinations, that this court may not reweigh the evidence or reassess the credibility of witnesses, that if Employee were making financially harmful mistakes as alleged and had

4

been creating such an unpleasant working environment Employer would not have continued to employ Employee for four years, that the only documented warning issued to Employee was on January 26, 2010, regarding Employee's failure to print out all necessary documents for an upcoming funeral, and that Employer failed to place Employee on notice that she could be discharged for making typographical errors, for her attitude, or for her rudeness. In its reply brief, Employer argues that the facts found by the ALJ show that Employee breached duties owed by the Employee to Employer, that the Board did not state that there was any evidence contradicting that Employee used racial slurs, was uncooperative, or rude, that Employer is not asking this court to reweigh the evidence, and that the undisputed evidence in the record demonstrates that Employer met its burden of showing that Employee was discharged for just cause.

"The standard of review on appeal of a decision of the Board is threefold: (1) findings of basic fact are reviewed for substantial evidence; (2) findings of mixed questions of law and fact—ultimate facts—are reviewed for reasonableness; and (3) legal propositions are reviewed for correctness." Recker v. Review Bd. of Ind. Dep't of Workforce Dev., 958 N.E.2d 1136, 1139 (Ind. 2011) (citing McClain v. Review Bd. of Ind. Dep't of Workforce Dev., 693 N.E.2d 1314, 1318 (Ind. 1998), reh'g denied). "Ultimate facts are facts that involve an inference or deduction based on the findings of basic fact." Id. (citing McClain, 693 N.E.2d at 1317, and internal quotation marks omitted). "Where such facts are within the 'special competence of the Board,' the Court will give greater deference to the Board's conclusions, broadening the scope of what can be considered reasonable." Id. (citing McClain, 693 N.E.2d at 1318).

5

In Indiana, an employee is ineligible for unemployment benefits if he or she is discharged for just cause. Stanrail Corp. v. Review Bd. of Dep't of Workforce Dev., 735 N.E.2d 1197, 1202 (Ind. Ct. App. 2000), trans. denied; Ind. Code § 22-4-15-1.[1] Ind. Code § 22-4-15-1(d) delineates nine non-exclusive scenarios that can amount to "[d]ischarge for just cause," which include "any breach of duty in connection with work which is reasonably owed an employer by an employee." This basis for a just cause discharge does not explicitly condition a claimant's ineligibility on a requirement that the breach of duty must have been knowing, willful, or intentional. Recker, 958 N.E.2d at 1140. The breach of duty "ground for just [cause] discharge is an amorphous one, without clearly ascertainable limits or definition, and with few rules governing its utilization." Id. (quoting Hehr v. Review Bd. of Ind. Emp't Sec. Div., 534 N.E.2d 1122, 1126 (Ind. Ct. App. 1989)).

> In considering whether an employer may utilize this provision as a basis for justifying its action, the Board should consider whether the conduct which is said to have been a breach of a duty reasonably owed to the employer is of such a nature that a reasonable employee of the employer would understand that the conduct in question was a violation of a duty owed the employer and that he would be subject to discharge for engaging in the activity or behavior.

Id. at 1140-1141 (quoting Hehr, 534 N.E.2d at 1126). "The duties reasonably owed to the employer by the employee may vary considerably depending on the circumstances."

---

[1] Ind. Code § 22-4-15-1(a) provides in part:

[A]n individual who has voluntarily left the individual's most recent employment without good cause in connection with the work *or who was discharged from the individual's most recent employment for just cause* is ineligible for waiting period or benefit rights for the week in which the disqualifying separation occurred and until the individual has earned remuneration in employment equal to or exceeding the weekly benefit amount of the individual's claim in each of eight (8) weeks.

(Emphasis added).

6

P.K.E. v. Review Bd. of Ind. Dep't of Workforce Dev., 942 N.E.2d 125, 132 (Ind. Ct. App. 2011), trans. denied. The employer bears the burden of establishing a *prima facie* showing of just cause for termination, and if that burden is met, the burden shifts to the employee to introduce competent evidence to rebut the employer's case. Spieker v. Review Bd. of Ind. Dep't of Workforce Dev., 925 N.E.2d 376, 378 (Ind. Ct. App. 2010).

In this case, evidence and testimony presented at the December 1, 2011 hearing reveals that Employee was employed by Employer in a clerical position and was responsible for preparing death certificates, register books, memorial folders, and other items. Employee delivered poor work performance and would not cooperate with other employees. Employee's supervisors repeatedly discussed with Employee the mistakes she had made, that her accuracy must improve, that every document must be proofread before it is printed, and that the mistakes "would happen over, and over, and over again." Transcript at 15. Employee was hired for the technical skills she presented and because she was efficient on the computer and was ultimately fired for the lack of those technical skills, her inaccuracy, and the fact that she was unable to get along with the other employees. The errors by Employee involved misspelling, incorrectly identifying, or failing to include family members' names on a registry book, a laminated bookmark, or a memorial folder.

Employer presented testimony that Employee's errors were continual and did not improve, and in about November 2009 Employer began to keep a record of the errors. Employer presented testimony and documentation related to seventeen examples of Employee's performance-related issues. The documentation of the errors submitted by

Employer included, in part, source documents or forms provided by customers or others which Employee would use to prepare Employer's documents and funeral provisions and the documents created or prepared by Employee which contained the errors. The errors related to a number of misspellings, typographical errors, misidentification of family members, and other mistakes. Employer counseled Employee about some of the errors.

On at least two occasions, Employee failed to transfer phones to an answering service when she left the office and later lied to Employer and said that she had transferred the phones. On one occasion, on January 26, 2010, Employer informed Employee that her job was to print all of the necessary paperwork associated with a death call and that, if she was not going to perform the work, that her employment would be terminated. Employee left work early, was subsequently instructed several times not to leave the funeral home early or transfer the phones to the answering service prior to closing, and nevertheless left early again.

One employee for Employer stated that Employee had a very poor attitude towards co-workers, vendors and sometimes clients, that Employee would become very defensive regarding mistakes, that two companies had stated they preferred to talk to someone besides Employee because she was rude anytime she spoke with them, that Employee would not help clean the building or empty her trash can as all employees were expected to do, that Employer wasted money on documents and paper products due to Employee's continual mistakes, and that Employee would treat her superiors like her enemies and would call them derogatory names.

8

Another employee indicated that Employee stated that everyone working with Employer were liars, that Employee would have a confrontation with a supervisor/owner and later state to the other employee "I ain't nobody's n----r, and he can do things himself," that the supervisor was "such an idiot- I refuse to kiss his ass like you and [other employees]," and "I can't understand why they don't fire me so I can just go home and collect unemployment." Exhibits at 58.

An employee who shared an office with Employee was told by Employee that "there would be no more eating at [the employee's] desk, no more chewing gum, and no more wearing perfume." Id. at 62. The employee stated that she had worked with nursing homes and rehab centers as clients for a long time and that soon after Employee started answering the phone those clients reported that Employee was "so rude." Id. Employee was "always very confrontational" and made "many, many, many[] mistakes in printed material" which were "always someone else's fault." Id. On one occasion, a supervisor asked the employee who shared an office with Employee to tell Employee to put paper in his office fax machine, that when Employee received the message she said "you are kidding me I am not going to do that," and that Employee obtained a package of paper from the supply room and placed the paper on the supervisor's desk but did not load the fax machine. Id. at 63.

Based upon the evidence and testimony above and in the record before the ALJ and Board, we conclude that Employer showed that Employee breached a duty in connection with work which was reasonably owed Employer and that Employee's conduct was of such a nature that a reasonable employee of Employer would understand

that the conduct was a violation of a duty owed Employer. Accordingly, Employee was discharged for just cause. See VanCleave v. Review Bd. of Ind. Emp' Sec. Div., 517 N.E.2d 1260, 1264 (Ind. Ct. App. 1988) (noting that the claimant persisted in a pattern of substandard work performance even though he knew what his duties were, had received training and assistance, and had been disciplined for substandard work performance and affirming the Board's decision denying the employee benefits). Accordingly, we reverse the decision of the Board that Employee was not discharged for just cause and remand for further proceedings consistent with this opinion.

Reversed and remanded.

FRIEDLANDER, J., and PYLE, J., concur.