**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jun 27 2013, 7:20 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**FRAN QUIGLEY**
**RUTH TONADE**, Certified Legal Intern
**MARYAM HASSANI**, Certified Legal Intern
Health and Human Rights Clinic
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**MARILYN TUCKER FULLEN**
Tucker and Tucker, P.C.
Paoli, Indiana

ATTORNEYS FOR APPELLEE,
REVIEW BOARD:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**STEPHANIE L. ROTHENBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANGELA SPURGEON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1210-EX-861 |
| | ) | |
| REVIEW BOARD OF THE INDIANA | ) | |
| DEPARTMENT OF WORKFORCE | ) | |
| DEVELOPMENT and FRENCH LICK | ) | |
| PROFESSIONAL MANAGEMENT, INC., | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE REVIEW BOARD OF THE DEPARTMENT
OF WORKFORCE DEVELOPMENT
The Honorable Steven F. Bier, Chairperson
Cause No. 12-R-3427

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Angela Spurgeon ("Employee") appeals a decision by the Review Board of the Indiana Department of Workforce Development (the "Board") denying her claim for unemployment benefits following the termination of her employment with French Lick Professional Management Inc. ("Employer"). Employee raises one issue which we restate as whether the Board erred in concluding that she was terminated for just cause. We affirm.

## FACTS AND PROCEDURAL HISTORY

Employee worked for Employer as a housekeeper from August of 2008 until her employment was terminated on June 15, 2012, at which time Employee applied for unemployment benefits. On July 18, 2012, a claims deputy issued a determination of eligibility finding that Employee was discharged for a breach of duty reasonably owed Employer and thus that Employee's employment was terminated for just cause and suspending Employee's unemployment benefits. Employee appealed the deputy's determination. On August 21, 2012, a telephonic hearing was held before an administrative law judge ("ALJ") at which Employee and Employer's representative, Ashlie Walls, appeared and presented testimony.

On August 24, 2012, the ALJ issued a decision which affirmed the July 18, 2012 determination of the claims deputy that Employee was discharged for just cause. In

concluding that Employer presented evidence of just cause for discharge, the ALJ made

the following findings of fact:

> FINDINGS OF FACT: [Employee] worked for [Employer] at [Employer's] timeshare condos and rentals business from August 8, 2008 until June 15, 2012. [Employee] worked for [Employer] as a full-time housekeeping employee. [Employee] worked full-time hours for [Employer]. [Employee's] supervisor was Ashlie Walls, head of housekeeping. [Employee] earned an hourly rate while working for [Employer]. [Employee's] job responsibilities were to get the villas cleaned for [Employer].
>
> On June 15, 2012, [Employee] arrived to work at 8:00 a.m. [Employee] spoke with [] Walls and complained about Cash, a linen driver employee. [Employee] requested that Cash be more respectful towards her. [] Walls told [Employee] that she was being rude. [] Walls then began assigning employees to work together. [Employee] did not like who she was assigned to work with and asked to work with a different employee. [Employee] went to work at villa 3 and villa 88 as she was assigned.
>
> At approximately 11:30 a.m., [] Walls notified [Employee] about her lunch. [Employee] asked [] Walls for money to buy blood pressure medicine. [] Walls told [Employee] to go home. [Employee] clocked out for lunch and [] Walls left for lunch.
>
> At approximately 12:00 p.m., [Employee] returned from lunch after being told to go home by [] Walls. [] Walls told [Employee] to go home again, get medicine, and that that [sic] she would call [Employee] when she was not busy. [Employee] did not go home as originally instructed because [Employee] was upset with her supervisor's direction to go home. [Employee] went to the housekeeping department and [] Walls was notified that [Employee] was being disruptive. [Employee] indicated she was going to be hiring an attorney and the unemployment office. [Employee] called Brenda Merkel [the director of operations]. [Employee] went home on June 15, 2012.
>
> [Employee] was not scheduled to work . . . after June 15, 2012. [Employer] discharged [Employee] on June 15, 2012.

Appellant's Appendix at 2-3. The ALJ concluded that Employee "breached a duty owed

to [Employer] when [she] did not go home as instructed by her supervisor," that

3

Employee's "supervisor told [Employee] to clock out and go home after [Employee] asked for a loan to buy blood pressure medicine," and that Employee "did not go home as instructed and become [sic] disruptive at [Employer's] place of business." Id. at 4. Employee appealed to the Board from the decision of the ALJ. On October 9, 2012, the Board issued a decision affirming the decision of the ALJ and adopting and incorporating the findings of fact and conclusions of law of the ALJ. Employee now appeals the Board's decision.

DISCUSSION

The issue is whether the Board erred in concluding that Employee's employment with Employer was terminated for just cause. Employee contends that she was not discharged for just cause because she did not breach a duty reasonably owed to Employer, that she was discharged for asking for a personal loan from her supervisor, and that such a request does not rise to the level of a breach of duty reasonably owed to an employer. Employee argues that, even if she was discharged for protesting her discipline, that protest does not rise to the level of a breach of duty to Employer, that this court should decline to consider evidence of Employee's acts after being discharged since they are not relevant to the just cause inquiry, and that Employee's statements of protest were provoked by a patently unreasonable form of discipline imposed upon her by Employer. Employee also argues that a reasonable reading of the ALJ's decision was that Employer's testimony was believed over that of Employee's, that thus the only possible act that could have led to discharge was Employee's request of money for medicine, and that under Indiana law an individual whose unemployment is the result of a medically

4

substantiated physical disability and who is involuntarily unemployed after having made reasonable efforts to maintain the employment relationship shall not be subject to disqualification.

Employer argues that Employee "was insubordinate and behaved disrespectfully by asking [] Walls for money, telling [] Walls who she wanted to work with, being loud and rude to another employee, not going home and waiting for [] Walls to call her after being told to do so . . . , being disruptive . . . , and by using the company phone for personal business." Employer's Brief at 7. Employer argues that Employee's conduct on June 15, 2012, was of such a nature that a reasonable employee would recognize a violation of the duty and would understand that such a violation of the duty would subject him/her to discharge.

The Board argues that the ALJ implicitly determined that Walls's testimony was more credible than Employee's testimony because the ALJ found in favor of Employer, that the ALJ had the authority to determine who was more credible and reliable and to make findings of fact based on those determinations, and that Employee wants this court to reweigh the evidence. The Board argues that Employee was discharged for breaching a duty owed to Employer by failing to comply with a direct order from her supervisor to go home. The Board further argues that it is reasonable to believe that an employer would expect its employees to listen to clear, direct orders by their immediate supervisor and that Employee "readily admits that she ignored a direct order from her supervisor to go home." Board's Brief at 11-12. The Board also maintains that Employee's actions were an intentional disregard of Employer's interests and that her conduct meets the

standard that an individual perform a "volitional act" or have "some control" of the circumstances surrounding the discharge in order to find the individual was discharged for just cause. Id. at 12.

The standard of review on appeal of a decision of the Board is threefold: (1) findings of basic fact are reviewed for substantial evidence; (2) findings of mixed questions of law and fact—ultimate facts—are reviewed for reasonableness; and (3) legal propositions are reviewed for correctness. Recker v. Review Bd. of Ind. Dep't of Workforce Dev., 958 N.E.2d 1136, 1139 (Ind. 2011) (citing McClain v. Review Bd. of Ind. Dep't of Workforce Dev., 693 N.E.2d 1314, 1318 (Ind. 1998), reh'g denied). Ultimate facts are facts that involve an inference or deduction based on the findings of basic fact. Id. (citing McClain, 693 N.E.2d at 1317). Where such facts are within the special competence of the Board, the Court will give greater deference to the Board's conclusions, broadening the scope of what can be considered reasonable. Id. (citing McClain, 693 N.E.2d at 1318).

In Indiana, an employee is ineligible for unemployment benefits if he or she is discharged for just cause. Stanrail Corp. v. Review Bd. of Dep't of Workforce Dev., 735 N.E.2d 1197, 1202 (Ind. Ct. App. 2000), trans. denied; Ind. Code § 22-4-15-1.[1]  Ind. Code § 22-4-15-1(d) delineates nine non-exclusive scenarios that can amount to

[1] Ind. Code § 22-4-15-1(a) provides in part:

> [A]n individual who has voluntarily left the individual's most recent employment without good cause in connection with the work *or who was discharged from the individual's most recent employment for just cause* is ineligible for waiting period or benefit rights for the week in which the disqualifying separation occurred and until the individual has earned remuneration in employment equal to or exceeding the weekly benefit amount of the individual's claim in each of eight (8) weeks.

(Emphasis added).

"[d]ischarge for just cause," which include "any breach of duty in connection with work which is reasonably owed an employer by an employee." This basis for a just cause discharge does not explicitly condition a claimant's ineligibility on a requirement that the breach of duty must have been knowing, willful, or intentional. Seabrook Dieckmann & Naville, Inc. v. Review Bd. of Ind. Dep't of Workforce Dev., 973 N.E.2d 647, 650 (Ind. Ct. App. 2012) (citing Recker, 958 N.E.2d at 1140). The breach of duty "ground for just [cause] discharge is an amorphous one, without clearly ascertainable limits or definition, and with few rules governing its utilization." Id. at 650-651 (citing Recker, 958 N.E.2d at 1140 (quoting Hehr v. Review Bd. of Ind. Emp't. Sec. Div., 534 N.E.2d 1122, 1126 (Ind. Ct. App. 1989))).

> In considering whether an employer may utilize this provision as a basis for justifying its action, the Board should consider whether the conduct which is said to have been a breach of a duty reasonably owed to the employer is of such a nature that a reasonable employee of the employer would understand that the conduct in question was a violation of a duty owed the employer and that he would be subject to discharge for engaging in the activity or behavior.

Id. at 651 (quoting Recker, 958 N.E.2d at 1140-1141 (quoting Hehr, 534 N.E.2d at 1126)). "The duties reasonably owed to the employer by the employee may vary considerably depending on the circumstances." Id. (quoting P.K.E. v. Review Bd. of Ind. Dep't. of Workforce Dev., 942 N.E.2d 125, 132 (Ind. Ct. App. 2011), trans. denied). The employer bears the burden of establishing a *prima facie* showing of just cause for termination, and if that burden is met, the burden shifts to the employee to introduce competent evidence to rebut the employer's case. Id. (citing Spieker v. Review Bd. of Ind. Dep't. of Workforce Dev., 925 N.E.2d 376, 378 (Ind. Ct. App. 2010)). On appeal

7

from a denial of benefits, the claimant bears the burden of showing error. McCurdy v. Dep't of Emp't and Training Servs., 538 N.E.2d 277, 279 (Ind. Ct. App. 1989).

In this case, the evidence presented at the August 21, 2012 hearing reveals that Employee worked for Employer as a housekeeper from August 7, 2008 until June 15, 2012. Walls testified that she was Employee's supervisor and that on June 15, 2012, she "sent [Employee] home at lunch." Transcript at 7. Walls testified: "[Employee] was needing medicine and I told her to get the money for her medicine and I would call her later when I wasn't busy, and [Employee] wouldn't leave. And she said she was suing, and she started all kinds of trouble to where I didn't feel that she could stay. I didn't let her go, she just wouldn't leave." Id. Walls testified that Employee "come up at lunchtime" at about 11:30 a.m. "trying to borrow money, saying that she needed this medicine and it was so important, and I told her to go home and figure out how to get the money and get herself her medicine and I would call her later when I wasn't busy. But instead of that, she cause a, some problems." Id. at 7-8. When asked by the ALJ if she knew why Employee was asking for certain medicine, Walls testified: "Well she had asked me before, telling me she needed blood pressure medicine, and I had loaned her the money, and it was just becoming a problem. So I told her she needed to go somewhere else to try to find the money." Id. at 8. When asked "[w]as this a personal loan or a loan through the Employer," Walls indicated it was a personal loan. Id. Walls indicated that Employee would not go home. Walls testified: "[Employee] was clocked out for lunch at that time, so I took my lunch. And whenever I come back [at 12:00 pm.], [Employee] had went back down to her villa and I didn't want to say all this stuff in front of all the

8

other employees so I called her when she was alone, and told her that she needed to go home, I was sending her a ride, and I would call her back later when I wasn't busy." Id.

Walls further testified that, at some point while Walls was in the area of the villas, Employee found Walls and Walls said that she was busy and that Employee "need[ed] to go home and get [her] medicine, get [her]self straightened up" and that Walls would call Employee later. Id. at 9. Walls testified that "that's when [Employee] proceeded to call, she said unemployment and attorney" and that Employee "called [Walls's] supervisor, and she was tying up our . . . department lines." Id. Walls testified that, while she was away from the housekeeping department area, she received a call from the maintenance supervisor who stated that Employee was at the maintenance office "causing a scene" and asked Walls to return to the maintenance office. Id. Walls testified that, by the time she returned, Employee had left.

The ALJ admitted into evidence a letter prepared by Employer's maintenance supervisor. The letter stated that Employee had arrived at the time clock which was located next to the desk of the maintenance supervisor, that the maintenance supervisor told Employee to do what Walls had instructed, that Employee became upset and shouted "[d]o I need to call Jo-Anne?!," that the maintenance supervisor said to "do whatever you feel is necessary," that Employee yelled "I'm calling my lawyer and suing this place!," and that the maintenance supervisor told her to just leave and allow Walls to call her at home. Exhibits at 40. The letter further stated that the maintenance supervisor worked for another fifteen minutes and that she then went to the housekeeping department and was surprised to find that Employee was still there. The letter stated that Employee "told

9

[the maintenance supervisor] that she had just spoken with Brenda [Merkel] and she was on her way up to talk to her," that the maintenance supervisor called to confirm with Brenda, and that Brenda "said that was false and to ask [Employee] to leave the property." Id. The letter stated that Employee then told the maintenance supervisor that Walls asked her to stay so they could talk, that she called Walls to confirm, and that Walls stated that it was false and asked that Employee go home. The letter stated that it became apparent that Employee "was stalling" and that Employee then "start[ed] yelling in front of other employees, that she was suing and calling the unemployment office" and that "she was going to visit Jo-Anne and find out how she sued the company," that Employee then "went to pick up the company phone and dial a number," that the supervisor told Employee she could not use the company line to do personal business and that Employee "completed the call regardless," and that [f]inally, after 50 minutes [Employee] went to clock out and leave the property." Id.

Employee testified that, when she went and found Walls at about 12:30 p.m., Walls told her to "go home and get better and reapply at another date." Transcript at 13. Employee testified that she did not ask Walls for money prior to that conversion at 12:30 p.m. but that she had asked for a personal loan from Walls at an earlier date. Employee testified that she asked Walls if she could work with a person other than the person she was assigned, that Walls nevertheless placed Employee with the same person, that she worked the hours of 8:00 a.m. to 12:00 p.m., and that "after that, [Walls] told me she was firing me, to go home, get better and reapply at another date." Id. at 15. Employee testified that Walls "told [her] to go home," that Employee "said why are you sending me

10

home," and that Walls said "just go home." Id. Employee testified: "So that's, I went, which I was wrong, I went back to my villa, started cleaning, because I felt like I didn't do anything wrong." Id. Employee further testified that Walls had a driver pick her up, that Employee asked the driver to stop where Walls was located, that Employee was upset and crying and asked Walls why she was sending her home, and that Walls "said no . . . , you go home, you get better and reapply at another date." Id. Employee testified that she called Brenda Merkel, the director of operations, that Brenda said to just go home, and later, when Employee called Merkel again on her cell phone, Merkel stated "nobody's above her but God" and then hung up. Id. at 16. Employee later testified that "after [she] took lunch at 12:00, [Walls] told [her] to go home" and that "I was, I, I, I thought she was right, I refused to go home cause I felt like I didn't do anything wrong." Id. at 17. In her closing statement, Employee stated that she was not told to go home because she was causing problems but because of her health.

To the extent Employee challenges findings of basic fact, our review of the record reveals substantial evidence of the findings of basic fact of the ALJ and the Board. See Recker, 958 N.E.2d at 1139. The ALJ and the Board found that Employee did not go home as originally instructed and that Employee went to the housekeeping department and was disruptive. Further, the ultimate findings of the ALJ and the Board, including that Employee "breached a duty owed to [Employer] when [Employee] did not go home as instructed by her supervisor" and became "disruptive at [Employer's] place of business," Appellant's Appendix at 4, are not unreasonable. See Recker, 958 N.E.2d at 1139.

11

Based upon the evidence and testimony above and in the record, we conclude that Employer established a *prima facie* showing that Employee breached a duty in connection with work which was reasonably owed Employer and that Employee's conduct was of such a nature that a reasonable employee of Employer would understand that the conduct was a violation of a duty owed Employer, and that Employee did not rebut Employer's case. Thus, Employee was discharged for just cause. See Seabrook, 973 N.E.2d at 651-652 (concluding that the employer showed that the employee had breached a duty in connection with work which was reasonably owed the employer and that employee's conduct was of such a nature that a reasonable employee of the employer would understand that the conduct was a violation of a duty owed the employer and that, accordingly, the employee had been discharged for just cause). Accordingly, we affirm the decision of the Board that Employee was discharged for just cause.

## CONCLUSION

For the foregoing reasons, we affirm.

Affirmed.

BRADFORD, J., concurs.

RILEY, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

ANGELA SPURGEON,             )
                                 )

    Appellant-Petitioner,      )
                                 )

        vs.                   )     No. 93A02-1210-EX-861
                                 )

REVIEW BOARD OF THE INDIANA  )
DEPARTMENT OF WORKFORCE     )
DEVELOPMENT and FRENCH LICK   )
PROFESSIONAL MANAGEMENT, INC., )
                                 )

    Appellee-Respondent.       )

**RILEY, Judge, dissenting**

I respectfully dissent from the majority's conclusion, affirming the decision of the Board that Employee was discharged for just cause. Even if Employee was discharged for refusing to go home and for protesting her discipline, as determined by the majority, I conclude that this protest does not rise to the level of a breach of duty to her Employer.

In *Ball v. Review Bd of Ind. Employment Sec. Div.*, 464 N.E.2d 1312*,* 1314, we stated that

> [w]e are of the opinion that all of the circumstances affecting the reprimand in each case of voluntary quitting have to be considered, and that if there are other factors involved, such as provocation brought on by unjust reprimands . . . or any other evidentiary factors which would have strong influential effect upon the mind of the employee contributing to or causing

him to voluntarily quit his employment, such contributing factors might, under certain circumstances, be considered as good cause within the purview of the Act, sufficient to enable the employee voluntarily quitting his job to secure compensation under the Act without the statutory penalty.

The evidence, as found by the ALJ, reflects that Employee had worked for Employer for the past four years. That specific morning, Employee requested her supervisor, Walls, for money to buy blood pressure medicine. The record reflects that this was a request for a personal loan from Walls; a request Walls had granted at least once in the past. However, on this occasion, instead of lending the money, Walls told Employee, without any further explanation, to go home.

It is clear that Employee interpreted Walls' instruction as a discharge from employment. In light of the previous occasion where Walls had granted Employee's request for a personal loan, I find that the instruction Employee received, coupled with her belief that she was about to be discharged, provoked Employee's expressions of frustration that followed Walls' instruction. Therefore, I conclude that because Employee was provoked by the instruction of her Employer to go home, she should be entitled to unemployment benefits.